### AUDITOR GENERAL *v.* BASSETT'S ESTATE.

#### *In re* BASSETT'S ESTATE.

1. TAXATION—INHERITANCE TAX—TEST AS TO WHETHER TRANSFERRED PROPERTY IS SUBJECT TO TAX.

   In determining whether property is subject to inheritance tax, the test is always whether it comes into possession and enjoyment of the transferee upon the death of the transferor, and if the death of the transferor makes no difference in the rights of the parties, there is no tax.

2. SAME—CONTROL NECESSARY TO SUBJECT PROPERTY TO INHERITANCE TAX MUST BE LAWFUL.

   The control of property by the transferor necessary to produce an inheritable interest, subjecting it to inheritance tax, must be a lawful power and by lawful right, and the physical ability and opportunity to steal, misappropriate, or fraudulently convert it would not be sufficient.

As to when transfer is deemed to take effect in possession or enjoyment at or after death within the inheritance tax law, see annotation in 49 A. L. R. 864.

3. SAME—ONE MAY USE LAWFUL MEANS TO REDUCE INHERITANCE TAX.

Although fraudulent devices to defeat taxes in imminent or actual process of levy are invalid, it is lawful for a person to use such means as the law provides for the purpose of reducing the burden of his taxes, if the means be not a mere subterfuge to defeat proper and valid assessment.

4. SAME—INCORPORATION TO REDUCE INHERITANCE TAX LAWFUL.

Incorporation to reduce future taxes has no fraudulent or illegal undertone.

5. SALES—UNCONDITIONAL OFFER AND ACCEPTANCE TO EXCHANGE STOCK RESULTS IN EXCHANGE AND PASSES TITLE.

Under the uniform sales act (3 Comp. Laws 1915, § 11850, Rule 1), an unconditional offer to exchange corporate stock and immediate and unequivocal acceptance results in an exchange, not in a contract to exchange.

6. CORPORATIONS—TRANSFER OF STOCK IS VALID ALTHOUGH NOT REGISTERED ON BOOKS OF CORPORATION.

The effect of failing to register transfer of stock on the books of the corporation is that the holder fails to obtain the right to vote and may lose his stock by fraudulent transfer on the books of the company by the registered holder to a *bona fide* purchaser; otherwise the holder has good title.

7. TAXATION—INHERITANCE TAXES—STOCK ASSIGNED TO HOLDING CORPORATION NOT SUBJECT TO TAX.

Shares of stock assigned by the owner to a holding corporation, which he controlled, not made in contemplation of death, within Act No. 257, Pub. Acts 1923, are not subject to inheritance tax on his death, although the transfer was never registered on the books of the corporation, where he did not reserve voting power of the stock, he accepted stock of the holding corporation in exchange therefor, made sales thereof to his relatives upon the basis of effective transfer, and, as between him and the holding corporation, the assignment must be held to have been a transfer *in præsenti.*

Error to Genesee; Parker (James S.), J. Submitted January 23, 1929. (Docket Nos. 44, 45, and 46, Calendar Nos. 34,113, 34,114, and 34,115.) Decided March 29, 1929.

Petition by Oramel B. Fuller, auditor general, to determine the amount of inheritance tax due from the estate of Harry H. Bassett, deceased. From affirmance by the circuit court of the determination of the probate court, the auditor general brings error. Affirmed.

*Wilber M. Brucker,* Attorney General, *Emerson R. Boyles,* Deputy Attorney General (*Ralph E. Hughes,* Assistant Attorney General, of counsel), for appellant.

*John J. Carton* and *Roy E. Brownell,* for appellees.

Fead, J. These three actions, consolidated, have the single purpose of determining and collecting inheritance taxes on the estate of Harry H. Bassett, deceased. They were submitted on statement of facts.

Bassett died of pneumonia on October 17, 1926, while on a trip to Europe. He was 52 years of age, had been in good health until a short time before his death, and was president of Buick Motor Company, a division of General Motors Corporation.

In 1923, General Motors Corporation, for the benefit of and to promote efficiency among its executives, organized Managers Securities Company, to buy and hold General Motors stock and with other sources of revenue which promised and produced great profits. It was a General Motors "family" corporation. To restrict ownership to active executives, all the stock was placed in escrow under irrevocable option to General Motors Corporation to purchase it between January 1st and May 15th, in any year, to May 15, 1930. The shareholders received interim certificates which were transferable,

which carried the right to vote and receive dividends, and, except for the option to General Motors Corporation, were equivalent to stock certificates.

November 30, 1923, Bassett purchased 2,400 shares of Series A and 2,400 shares of Series B stock of Managers Securities Company stock. Certificates in his name were issued and deposited in escrow and interim certificates delivered to him. The purchase price was $300,000, of which he borrowed $290,000 from Bankers Trust Company of New York, with other stock as collateral. Later the interim certificates for 4,800 shares of Managers Securities Company were substituted for the other stock as collateral to his loan and were so held by Bankers Trust Company to the time of Bassett's death. After his death, his executor, First National Bank of Flint, paid the loan, then reduced to $120,000, and received the certificates. On December 14, 1926, Genesee Corporation, hereafter described, made a demand on the executor for the certificates, which was refused. In the spring of 1927 the stock was redeemed by General Motors Corporation, partly in cash and partly in General Motors stock which was issued in the name of the estate of Harry H. Bassett, deceased, and later sold by the executor. The proceeds were turned over to Genesee Corporation. At Bassett's death the Series A stock was worth $464,494.61 and Series B stock, $6,234,089.23. The stock was inventoried as part of his estate. The appraisers refused to appraise it on the ground that it was not Bassett's property. Genesee Corporation filed a petition to strike from the inventory the Managers Securities Company stock, and the court so ordered. This is one of the orders here reviewed. The State, at the filing of the final account, asked that such stock be included

in the assets of the estate for the purpose of taxation, which was denied, and it also commenced an original suit at law for collection of inheritance taxes on the stock. These actions present the other matters for review. An inheritance tax of $100,622.71, upon exclusion of Managers Securities Company stock, was assessed and paid.

On April 6, 1925, Bassett caused a personal or holding corporation, known as Genesee Corporation, to be formed under the law of Delaware, "partly to facilitate the handling of his securities, and partly to reduce the payment of taxes." On September 24, 1925, the corporation was authorized to do business in Michigan. On April 15, 1925, Bassett made an offer to Genesee Corporation:

"In consideration of the issuance to me or my nominee of 12,500 shares of the no-par value capital stock of your corporation, full paid and non-assessable, I hereby offer to sell and convey unto your corporation the following stocks, bonds and other property rights and interests, viz.: (Securities, including 2,400 shares Series A, 2,400 shares Series B Managers Securities Company, and a number of others listed).

"All of the above securities and interests are fully paid and non-assessable except as to such further payments as may be required in connection with Camera Syndicate or Bendlecrest Subdivision and/or Colwell-Urban contract and except further that certain shares of the aforesaid stock are now held by Bankers Trust Company of the city of New York and Genesee County Savings Bank as collateral for the payment of loans to me in the sums of $290,000 and $15,000 respectively, which loans with interest I hereby undertake and agree to pay without cost or expense to your corporation. In the event of your acceptance of this offer all dividends or other income received by me upon or in respect of any of

the foregoing securities or investments on or subsequent to March 1, 1925, shall go and belong to your corporation.''

On May 21, 1925, Genesee Corporation, at a duly called and held meeting of its board of directors, adopted and entered on its records a resolution of acceptance, the pertinent part of which is:

''Resolved, that the offer of said Harry H. Bassett to sell to this corporation the property herein above referred to, subject to the terms and conditions and option contained in said offer, be and hereby is accepted, and that the proper officers of this corporation be and hereby are authorized and directed to execute in the name of and in behalf of the corporation and under its corporate seal, such agreement or agreements as may be necessary for the purchase of said property in accordance with said offer; and

''Further Resolved, that the proper officers be, and they hereby are authorized and directed to issue and deliver, in payment for said property in accordance with said offer, certificates of full paid capital stock of this corporation to said Harry H. Bassett or his nominees for the aggregate of 12,490 shares, and to the signers of the certificates of incorporation or to their respective assigns for the ten shares subscribed for by them, as shown by the certificate of incorporation.''

On the same day a certificate for 12,500 shares of Genesee Corporation was issued to Bassett, was surrendered by him for cancellation, and certificates issued on May 21st or May 28th to Harry H. Bassett, 1,400 shares; to Mary T. Bassett, his mother, 300 shares; to Jessie H. Bassett, his wife, 7,000 shares; to Tammison B. Mann, his sister, 500 shares; to Cornelia B. Kapp, his sister, 500 shares; to Harry

H. Bassett, guardian for Harry Hood Bassett, his minor son, 1,500 shares; to Harry H. Bassett, guardian for Marie Antoinette Bassett, his minor daughter, 1,000 shares; and to Russell Bonynge, his secretary, 300 shares. The stock was paid for by demand promissory notes to the order of Harry H. Bassett. The mother, sisters, and children were not financially responsible at the time the notes were given. The wife owned property not exceeding in value 50 per cent. of her liability on the note. The stock certificates, indorsed in blank, were attached to the notes, delivered to Bassett, and remained in his possession until his death. The loans were inventoried as part of his estate. Payments were made upon the notes from time to time, practically all of which were with dividends from Genesee Corporation. Payments by Jessie H. Bassett were not indorsed on her note but were credited on the ledger. Payments were indorsed on the other notes. It was anticipated that such dividends would pay the notes in full by the option date of May 15, 1930. Bassett was authorized by the probate court to sell the stock to his minor children and execute the notes in payment.

Bassett was president of Genesee Corporation and directed the management and control of its affairs and participated in declaring dividends, including those received from Managers Securities Company. His wife, sister, and secretary were directors and officers. Later his wife's secretary was made secretary of the corporation.

No other assignment or instrument affecting the transfer of Managers Securities Company stock was executed except two orders to such corporation, signed by Bassett, one of June 11, 1925, to pay all future dividends on the stock to Genesee Corpora-

tion, "this dividend order to remain in force until revoked;" and the other dated September 1, 1925, to pay the dividends to Wilmington Trust Company, of Wilmington, Delaware, "for deposit to the account of the Genesee Corporation," and reciting:

"This letter cancels any previous dividend instructions and is to remain in force until otherwise advised by me."

The order remained in force during Bassett's lifetime.

The State claims inheritance taxes upon the value of the 4,800 shares of Managers Securities Company at the time of Bassett's death. It concedes that the transaction was not entered into by Bassett in contemplation of his death, within Act No. 257, Pub. Acts 1923, but contends that there was no effective transfer of the interim certificates to Genesee Corporation during his lifetime because they were always under his personal control.

" 'The test is always whether the property comes into possession and enjoyment of the transferee upon the death of the transferor. If the death of the transferor makes no difference in the rights of the parties, there is no tax.' Gleason & Otis on Inheritance Taxation (4th Ed.), 876," cited in *People* v. *Welch's Estate,* 235 Mich. 555.

The State relies upon the reasoning in *Chase National Bank* v. *United States,* — U. S. — (49 Sup. Ct. 126), involving the Federal estate tax on life insurance policies in which the assured reserved the power to change beneficiaries during his lifetime. The court held that, while the interests of the beneficiaries vested in them before death of the insured, the latter retained a legal interest in the policies, which gave him the power of disposition of them

and their proceeds as completely as if he were the sole beneficiary of them, and such interest was taxable because:

"Termination of the power of control at the time of death inures to the benefit of him who owns the property subject to the power, and thus brings about, at death, the completion of that shifting of the economic benefits of property which is the real subject of the tax, just as effectively as would its exercise, which latter may be subjected to a privilege tax. *Chanler* v. *Kelsey*, 205 U. S. 466 (27 Sup. Ct. 550). * * * And the nonexercise of the power may be as much a disposition of property testamentary in nature as would be its exercise at death. *Bullen* v. *Wisconsin*, 240 U. S. 625 (36 Sup. Ct. 473); cf. *United States* v. *Robbins*, 269 U. S. 315, 327 (46 Sup. Ct. 148); *Cohen* v. *Samuels*, 245 U. S. 50 (38 Sup. Ct. 36)."

The control necessary to produce an inheritable interest must, of course, be a lawful power and by lawful right. The physical ability and opportunity to steal, misappropriate, or fraudulently convert the certificates and negotiate them would not be sufficient.

The State contends that Genesee Corporation is to be treated as Bassett's *alter ego* and not as a separate entity in determining control of the Managers Securities Company stock. It concedes that it is lawful for a person to form a corporation and transfer property to it for the purpose of reducing his tax burden, but urges that Genesee Corporation was merely a dummy for Bassett, a cover under which he intended to, and did, retain personal control of the Managers Securities Company stock, and that the court should disregard the corporate form and treat the corporation as Bassett himself.

In Wormser on The Disregard of The Corporate Fiction (1927), p. 84, after exhaustive discussion of cases, the conclusion of the author is:

"The nearest approximation to generalization which the present state of the authorities would warrant is this: When the conception of corporate entity is employed to defraud creditors, to evade an existing obligation, to circumvent a statute, to achieve or perpetuate monopoly, or to protect knavery or crime, the courts will draw aside the web of entity, will regard the corporate company as an association of live, up-and-doing, men and women shareholders, and will do justice between real persons."

Fraudulent devices to defeat taxes in imminent or actual process of levy are invalid. *Eagle Manfg. Co.* v. *City of Davenport,* 101 Iowa, 493 (70 N. W. 707, 38 L. R. A. 480); *Stifel* v. *Brown,* 24 Mo. App. 102; *Hawley's Estate,* 214 Pa. 525 (63 Atl. 1021, 6 Ann. Cas. 572). On the other hand, it is lawful for a person to use such means as the law provides for the purpose of reducing the burden of his taxes, if the means be not a mere subterfuge to defeat proper and valid assessment. *Eagle Manfg. Co.* v. *City of Davenport, supra; United States* v. *Isham,* 17 Wall. 496; *Weeks* v. *Sibley* (D. C.), 269 Fed. 155; *Ottumwa Savings Bank* v. *City of Ottumwa,* 95 Iowa, 176 (63 N. W. 672). Incorporation to reduce future taxes has no fraudulent or illegal undertone. Both the State and Federal governments take account of the differences between individuals or voluntary associations and corporations, and impose taxes upon them on different bases. No just criticism can be made of individuals who accept the option thus offered and use that method of ownership and management which best serves their advantage. Any

evils that result may be readily corrected by legislation.

We find in the record no evidence of fraudulent design or ulterior scheme on the part of Bassett nor indication that the transaction was not as it purported to be—a plan by which he could lawfully reduce his taxes and provide for his natural beneficiaries. It may be assumed that he expected to retain control of the affairs of Genesee Corporation. But such expectation must have been founded on personal influence and mutual confidence among the family, as he put legal control out of his hands by selling a majority of the stock to the other members.

The State contends, however, that Bassett again became the owner of all the Genesee Corporation stock when it was indorsed and delivered to him with the notes. Under a practically identical plan of sales to relatives (son and daughter) upon promissory notes, with the stock as collateral, both stock and notes held in possession of the father until a few days before his death, then delivered to the children, and the balance on the notes canceled, payments having been made only from dividends on the stock, the sales were held *bona fide* and valid, the notes valuable consideration for the transfer of stock, and the transfer not subject to the Federal estate tax except as to the amount canceled in anticipation of death. *In re Schwing*, 3 Board of Tax Appeals Rep. 697. Bassett held the certificates as pledgee. The record indicates no other ground upon which he could have justified possession of the certificates. It bears affirmative evidence that such stock belonged to the relatives, not to him, and was held as pledgee, in his recognition of them as stockholders and officers of the corporation, in crediting

dividends upon the notes, and, of particularly persuasive force, in his obtaining an order of the probate court, to which he knew he must make account, for purchase of stock for the minor children upon the same plan. The State did not point out in what way Bassett could have justified the possession of both the certificates and notes covering the whole purchase price except upon the security basis. There was no evidence that Genesee Corporation was not conducted as a separate entity, or that Bassett did any acts indicative of complete ownership of the stock. Holding as pledgee, he had a special interest in the certificates to secure his loans, but the general property remained in the pledgors. 31 Cyc. 803; *Hurcomb's Estate,* 74 N. Y. Supp. 475; *Smith* v. *Lee* (C. C.), 77 Fed. 779.

The record does not disclose a situation which would warrant a finding that Bassett and Genesee Corporation were not separate entities both in law and fact.

The determinative question is whether there was an effective transfer of Managers Securities Company stock to Genesee Corporation during Bassett's lifetime, so that no right therein passed to his beneficiaries at and by his death which they did not have, and could not have exercised, before his death.

The test is whether the property passed with all its attributes of ownership independently of the death of the transferor. It is the absence of the power of control with the unrestricted right of the transferee to dispose of the property and to receive and use the proceeds. *State Street Trust Co.* v. *Treasurer & Receiver General,* 209 Mass. 373 (95 N. E. 851).

Shares of stock in a corporation constitute a species of incorporeal property. Stock certificates

are not stock. They are merely evidence of the existence and ownership of stock. *Lipscomb's Adm'r* v. *Condon,* 56 W. Va. 416 (49 S. E. 392, 67 L. R. A. 670, 107 Am. St. Rep. 938). The ordinary method of transfer is by indorsement and delivery of the certificate with power of attorney to make transfer on the books of the corporation. *Lebrecht* v. *Nellist,* 184 Mo. App. 335 (171 S. W. 11). This is usually followed by actual transfer on the corporate books and issue of new certificate in the name of the transferee. The ordinary method, however, is not exclusive. Thus, unissued stock may be sold without obtaining a certificate, *Ford* v. *Howgate,* 106 Me. 517 (76 Atl. 939, 29 L. R. A. [N. S.] 734); stock may be sold without delivery of certificate or power of attorney to transfer it on the corporate books, *Lipscomb's Adm'r* v. *Condon, supra;* it may be assigned by separate instrument, *Brown* v. *Hotel Association of Omaha,* 63 Neb. 181 (88 N. W. 175); it may be transferred by bill of sale or any sufficient mode for passing title to a chose, *Young* v. *New Pedrara Onyx Co.,* 48 Cal. App. 1 (192 Pac. 55); it is not necessary that the certificate be physically delivered or indorsed or transferred on the books, *Grissom* v. *Sternberger,* 10 Fed. (2d) 765 (C. C. A.); even a statutory method of transfer is cumulative, not exclusive, 5 C. J. p. 898; the equitable title may be transferred by mere delivery of the certificate and without written assignment, 2 L. R. A. (N. S.) 804, note. See, also, 14 C. J. p. 673.

An unconditional offer to exchange stock and immediate and unequivocal acceptance results in an exchange, not in a contract to exchange, under the law of sales. *Young* v. *New Pedrara Onyx Co., supra;* 3 Comp. Laws 1915, § 11850, Rule 1. The pledge to Bankers Trust Company did not prevent

transfer to Genesee Corporation. *Ball* v. *Peper Cotton Press Co.,* 141 Mo. App. 26 (121 S. W. 798). Some courts hold that where a contract of sale is consummated, but without assignment and delivery of the certificates, the legal title passes to the buyer, while others hold that he obtains legal title against the seller, but only equitable title as against the corporation and *bona fide* purchasers. *Lipscomb's Adm'r* v. *Condon, supra.* The effect of failing to register transfer on the books of a corporation is that the holder fails to obtain the right to vote and may lose his stock by fraudulent transfer on the books of the company by the registered holder to a *bona fide* purchaser; otherwise the holder has good title. *Havens* v. *Bank of Tarboro,* 132 N. C. 214 (43 S. E. 639, 95 Am. St. Rep. 627).

It thus appears that the method here employed was sufficient to work a transfer of the Managers Securities Company stock to Genesee Corporation. But as the method left ragged ends which could imperil the assignment and might not entirely foreclose the question of the intention of the parties to work a present or a future transfer, it is not to be commended. The ravelings must be examined and gathered up.

Because transfer was not made on the books of the corporation, the voting power of the stock was left in Bassett. The statement of facts gives no hint of reason for not so completing the assignment. A legitimate reason rather insistently suggests itself. In view of the character of the personnel of Managers Securities Company, the purpose of the corporation, and the option of the stock, the assignment may have been withheld from the books for business reasons. However, the retention of voting power would not affect the transfer. In a case in-

volving the Federal estate tax, where the donor voted the stock until his death, continued as an officer and director of the corporation, and received the dividends to pay his life insurance premiums, the gift of the stock during his lifetime was held not invalidated nor postponed nor the property liable to tax. *Grissom* v. *Sternberger, supra.* There was no legal reservation of the voting power to Bassett in the agreement of sale to bring the case within *Re Ferris' Estate,* 94 N. J. Eq. 726 (121 Atl. 692), where it was held that the transfer of such reserved voting power to the transferee at the death of the transferor was subject to inheritance tax.

The reservation in Bassett's order to pay dividends to Genesee Corporation until he should otherwise advise offers substantial argument that he intended to retain some personal control of the stock. Under some circumstances, such reservation would seriously endanger the transfer. Here, it is an isolated indication that he did not deem the assignment presently operative, does not seem to have been brought to the attention of the Genesee Corporation, and could not defeat the effect of his acts nor overcome the cumulative effect of the other incidents of the transaction.

The controlling factor seems to me to be that if a suit for ownership of the stock and the power to control and sell it had arisen between Bassett and Genesee Corporation in his lifetime, there could be no doubt but that, upon this record, the assignment would have been held a transfer *in præsenti.* Bassett could not have escaped the combined effect of his offer to assign, the written acceptance, full performance by Genesee Corporation, acceptance of such performance by himself, the sales to his relatives upon the basis of effective transfer, and,

of particular force, the sales to minors by permission of probate court founded upon the assignment. In addition, Bassett's trust relationship to stockholders as an officer of the corporation would have prevented his denying the effectiveness of the transfer, and, except the reservation in the dividend order, there was no evidence that he did any act to deny the transaction as an assignment or did not consider the transfer complete.

It is true that Bassett still had the physical power to sell the stock and that *bona fide* purchasers from him might have acquired rights superior to those of the Genesee Corporation. But he could have been compelled to account to the corporation therefor, not merely in damages for breach of agreement to sell, but upon the basis of personal and official misappropriation of corporate property.

It appearing that the Managers Securities Company stock was transferred to Genesee Corporation during Bassett's lifetime and that no legal interest therein remained in him at his death, no inheritance tax is assessable thereon.

It is of interest that the Federal authorities, upon consideration of the facts, held the stock not liable to estate tax.

The judgments are affirmed.

North, C. J., and Fellows, Wiest, Clark, McDonald, and Sharpe, JJ., concurred. Potter, J., did not sit.