*In re* PETITION OF FARBER.

LANDE *v.* J. E. FARBER CO.

1. JUDGES—DISQUALIFICATION—QUESTION OF LAW.

Whether judge was disqualified to sit in case involving accounting in receivership proceedings for corporation because bank in which he was stockholder was creditor of corporation is question of law not affected by considerations of propriety or delicacy, where record did not disclose that corporation was indebted to bank, and it is not claimed that judge knew of said debt.

2. SAME—WHEN JUDGE DISQUALIFIED BY REASON OF BEING STOCKHOLDER.

Where judge or corporation of which he is stockholder is not party to suit, interest which will disqualify him must be direct interest in subject-matter of litigation or in outcome of suit, so that he or corporation will be directly affected through pecuniary or property loss or gain or accrual of right or liability.

3. SAME—STATUTES.

General rule of law that judge is disqualified from sitting in case because corporation of which he is stockholder is creditor of one of parties has no foundation in reason, nor does it bear any relation to preservation of courts from shadow of suspicion, which is purpose of statute (3 Comp. Laws 1929, § 13888).

4. SAME.

Judge was not disqualified to sit in case involving receivership of corporation because bank of which he was stockholder was creditor of corporation, where record did not disclose said fact, and it is not claimed that judge knew of said debt (3 Comp. Laws 1929, § 13888).

5. RECEIVERS—DISCHARGE—CORPORATIONS.

When receivers for corporation were discharged by order of court, corporation became its own master, as though no receivers had been appointed.

On holding stock as disqualification of judge, see annotation in 48 A. L. R. 617.

As to reduction of capital stock and distribution of capital assets upon reduction, see annotation in 44 A. L. R. 11.

6. Courts—Jurisdiction—Conflict of Laws—Receivers—Priority.

In case of conflict, in appointment of receiver, priority generally follows decree of court which first obtains jurisdiction of parties and subject-matter, and it does not rest upon race between courts to final decree.

7. Receivers—Courts—Conflict of Laws.

Although different receivers may be appointed in different proceedings, such conflict should be avoided, especially as between branches of same court.

8. Same—Priority of Receivership.

Where receivers for corporation were discharged by order of judge appointing them, and nearly two years later same judge set discharge aside and ordered receivership to continue under one of receivers, but in meantime another judge of same court, in different proceedings, had appointed other receivers for same corporation, latter had priority as to control of corporation.

9. Same—Accounting—Overlapping—Appeal and Error.

Where accounting in different receivership proceedings before different judges in same court overlapped, but both decrees have been appealed, and both accountings are before Supreme Court, accounting is divided according to logical jurisdiction rather than upon basis of technical jurisdiction.

10. Corporations—Transfer of Stock—Minutes of Stockholders' Meeting.

Minutes of stockholders' meeting clearly showing intent to presently convey certain shares of stock to certain persons operated to transfer said stock, although there was no issuance of formal certificates.

11. Same—Reduction of Capital Stock.

If capital stock of corporation was reduced, stockholder to whom no stock was issued is entitled to decree for shares proportionate to capital structure.

12. Receivers—Accounting—Liability for Misappropriation of Funds.

In suit for accounting for funds of corporation which had been in hands of receiver, court will not concern itself with apportioning liability for misappropriation between receiver and directors on items where both participated in defrauding corporation.

13. SAME—ACCOUNTING FOR MONEYS IRREGULARLY OBTAINED.

Receivers and officers of corporation who appropriate corporate moneys by irregular and devious devices may not justify themselves by mere oral claims of honest application of said funds, but proof of honest disposition must be clear, since trickery of method implies dishonesty.

14. SAME—RECEIVER ACCOUNTABLE FOR UNLAWFUL ACTS.

Receiver for corporation must account as such, and he may not excuse unlawful acts because others receive part of their benefits.

15. SAME—IRREGULARITY NO EXCUSE FOR NEGLECT.

Although receivership was not conducted in regular way, receiver may not plead irregularity as excuse for neglect of duty, since receiver departs from proper procedure at his peril.

16. SAME—RECEIVER CHARGEABLE WITH MONEY IRREGULARLY DRAWN.

Where receiver caused checks to be drawn in favor of creditor of corporation and indorsed in her name, and then he deposited them to his account or cashed them, he is chargeable with amount thereof, notwithstanding his claim that he paid the money to officer of corporation for creditor.

17. SAME.

Check drawn by corporation's receiver to nonexistent company, claimed to be in payment of goods for which no invoice can be found, is chargeable to receiver.

18. SAME.

Where corporation's receiver, by means of fictitious invoices, drew certain amount of money and compromised with corporation's creditors, he is chargeable with balance for which he has not accounted.

19. SAME—PADDED PAYROLLS.

Corporation's receiver who obtained money by issuing payroll checks payable to persons who had not worked for corporation is chargeable with whole amount thus obtained, although part of money was given to officer of corporation.

20. SAME—WHEN RECEIVER ENTITLED TO CREDIT.

Corporation's receiver is entitled to credit for amounts paid to officer of corporation if expended for proper purposes of corporation; if not properly expended both are chargeable with said amount until corporation is reimbursed.

21. SAME—ACCOUNTING—DISCHARGE OF RECEIVER—EQUITY.

Where custom of monthly adjustments between corporation and purchaser of its scrap was continued after said purchaser became corporation's receiver, officers of corporation, who were largely responsible for said custom, and who consented to discharge of receiver, may not, months later, and after records have been destroyed, profit from said transaction at expense of receiver.

22. SAME.

Where corporation's receiver and one of its officers appropriated corporation's money to purchase property in receiver's name as trustee, but deal was not consummated and only part of money recovered, balance is chargeable against both of them.

23. SAME.

Receiver may not be charged with moneys claimed to have been illegally expended for legal services where there is no testimony on items to sustain said charge.

24. SAME.

Corporation's receiver is chargeable with amount paid for copper purchased for himself with corporate funds, where he fails to show repayment.

25. SAME—EXCESSIVE ALLOWANCE FOR SALARY.

Salaries of $1,000 per month to corporation's receiver and its officers, *held*, excessive, and reduced to $500 per month, except for period when corporation was under private management, for which period receiver is allowed $300 per month.

26. CORPORATIONS—PATENTS.

Finding of court below that corporation's officer owns patent rights which receiver claimed belonged to corporation is sustained, on appeal.

27. SAME—ACCOUNTING—CREDITS TO OFFICER OF CORPORATION.

Corporation's officer is entitled to benefit of amount owing to him by corporation, less credits, and carried on its books, in accounting between him and corporation.

28. SAME—RECEIVERS—ACCOUNTING.

Provision of decree that corporation's receivers institute proceedings against former receiver and corporation's officers to recover all moneys of corporation improperly taken is approved, on appeal; scope of proceedings to be stated in decree.

29. SAME—STOCKS AND STOCKHOLDERS—LIEN ON STOCK—ACCOUNT-
ING.

Charges against corporation's receiver, who was stockholder, and
its officers, is made lien on their stock in corporation, includ-
ing sums paid by corporation in connection with officer's
patents not properly accounted for.

Appeal from Genesee; Parker (James S.), J.
Submitted November 2, 1932. (Docket No. 106, Cal-
endar No. 36,681.) Decided December 6, 1932.

In the matter of the petition of John E. Farber
and another for voluntary dissolution of J. E.
Farber Company, a Michigan corporation. On peti-
tion to reopen case for accounting from receiver
Louis Lande. From decree rendered, receiver ap-
peals. Modified.

Appeal from Genesee; Gadola (Paul V.), J. Sub-
mitted November 2, 1932. (Docket No. 107, Calen-
dar No. 36,687.) Decided December 6, 1932.

Bill by Louis Lande and another against J. E.
Farber Company and others for accounting and
other relief. Cross-bill by defendants against plain-
tiff Lande for an accounting. From decree rendered,
all parties appeal. Modified. Cases consolidated
for opinion.

*C. M. Van Benschoten* and *Wilson & Hoffman,* for
appellant Lande.

*Frank C. Cook* and *John P. O'Hara,* for appel-
lants John E. Farber Company and others.

NORTH, J. These appeals were submitted together,
and, while separate records were made, the causes
are so intermingled that it is better to dispose of
them in one opinion.

In June, 1925, a manufacturing concern conducted by John and Edward Farber, who are brothers, was incorporated as J. E. Farber Company, Inc., for the purpose of securing more capital. The plan of financing was not successful, and in November, 1925, on bill for dissolution filed by the Farbers, Louis Lande and George Taft were appointed receivers by Hon. James S. Parker, circuit judge. Taft was inactive and is not interested here.

In December, 1928, the receivers prepared a petition for discharge, alleging that all debts had been settled except current bills and a mortgage, and praying that the property be returned to the corporation. The corporation, over the signatures of John Farber as president and Edward Farber as secretary and treasurer, appended to the petition formal consent to the discharge. The petition and a form of order were either delivered to Judge Parker at chambers or left at his office. For some reason the petition was not filed in the clerk's office and the order signed. No reports had been made by the receivers, no accounting had, and none accompanied the petition. A year later, carbon copies of the original petition and form of order were redated and executed and the formal order of discharge of the receivers was made on December 9, 1929.

During the receivership, the business was conducted much as before by John and Edward Farber, but with Lande acting as financial director. John was manager of production, sales, and service. Edward worked in the shop and had general charge while John was away. Lande kept the books. Lande was a junk dealer and for many years had taken the Farbers' scrap metal and furnished them used machines and various supplies. The practice con-

tinued during the receivership. It is a fair characterization of the situation that the receivership merely provided the corporation a moratorium on its debts, but without substantial change in the operation of its business except that Lande gave it financial aid and direction.

After the receivership, Lande was elected a director and officer of the corporation, and participated in the management until the present trouble arose.

March 13, 1931, Lande and VanDoorn, as stockholders, filed a bill against the corporation, the Farbers, and their aunt, Celestine Voiland, alleging misappropriation of corporate moneys, property, and patent rights, mismanagement by the Farbers, that the corporation was in financial straits, and praying for a receiver and return of the misappropriated assets to the corporation. March 20th, defendants filed answer and cross-bill, alleging that Lande, while receiver, misappropriated moneys of the corporation, and praying an accounting from him and return to the corporation of the sums taken. The cause was heard by Hon. Paul V. Gadola, circuit judge, the hearing commencing March 30th and running about two weeks. April 25th the court filed findings in which he appointed George Taft and Paul H. Kelly receivers. No other order of the appointment appears in the record, but the calendar entries show receivers' bonds filed May 2d and 6th. May 23d, the court filed findings of fact and law to the effect that Lande is a stockholder, that Lande and defendants Farber have misappropriated corporate moneys, that the patent rights belong to John Farber personally, and in the findings it ordered the receivers "previously appointed" to institute proceedings against Lande and Farber to

recover such moneys. Formal decree was entered October 10, 1931, in accordance with the findings and "the receivers previously appointed, whose appointment is now confirmed," were ordered to institute proceedings against Lande and defendants Farber for misappropriated moneys. There was no order specifically authorizing the receivers to take possession of the property of the corporation, but it appears that they have done so, although the plant has not operated for some time because of this litigation. All parties appeal.

June 6, 1931, after the findings but before decree by Judge Gadola, John and Edward Farber filed petition in the original proceeding, charging Lande with misappropriation of corporate moneys while he was receiver, praying that the order of December 9, 1929, discharging the receivers, be set aside and that Lande be ordered to render an account as receiver and pay the corporation the sums found due. Full hearing was had before Judge Parker, who filed an opinion September 14th, holding Lande to account in the sum of $30,000, and on September 25th entered decree in accordance therewith, setting aside the order of discharge of receivers, removing Lande as receiver, ordering the receivership to continue with Taft as receiver, and authorizing execution for collection of the sums found due from Lande. Lande appeals.

The hearings overlapped as to transactions of 1929, and the findings and decrees therein do not agree. More facts will be stated in connection with specific subjects.

February 8, 1932, Lande filed motion to vacate the decree entered by Judge Parker on September 25, 1931, and to refer the cause to another judge for a new hearing, on the claim that Judge Parker had

been disqualified to sit. By affidavit, he set up that, at the time of the hearing, findings, and decree, Judge Parker was a stockholder in the Citizens Commercial & Savings Bank, the principal creditor of J. E. Farber Company, Inc.; that Lande and John Farber were indorsers on the notes to the bank for $27,500; that the bank would be the principal creditor to be benefited by the decree, and the facts had been discovered after entry of decree. The contention is that the decree is void, citing *Horton* v. *Howard,* 79 Mich. 642 (19 Am. St. Rep. 198); *Davis Colliery Co.* v. *Charlevoix Sugar Co.,* 155 Mich. 228, applying 3 Comp. Laws 1929, § 13888:

"No judge of any court shall sit as such in any cause or proceeding in which he is a party, or in which he is interested."

The claim was not made before decree. The bank is not a party to the suit. The record did not disclose that the corporation is indebted to the bank. It is not claimed that Judge Parker knew there was such a debt. The question, therefore, is one of law, not affected by considerations of propriety or delicacy.

Where a judge, or a corporation of which he is a stockholder, is not a party to the suit, the interest which will disqualify him must be a direct interest in the subject-matter of the litigation or in the outcome of the suit, so that he or the corporation will be directly affected through pecuniary or property loss or gain or accrual of right or liability. 33 C. J. pp. 992, 1009; *Aldrich, Appellant,* 110 Mass. 189.

Without anticipating the effect of special circumstances in any given case, especially when brought to the attention of the court before hearing, a general rule of law that a judge is disqualified from

sitting in a case because a corporation, of which he is a stockholder, is a creditor of one of the parties, has no foundation in reason, nor does it bear any relation to the preservation of the courts from the shadow of suspicion, which is the purpose of the statute.

As both the corporation and Lande are obligated to the bank on the same debt, it does not appear that it is to the interest of the bank to take money from Lande and give it to the corporation, to be paid to creditors generally; nor was there a showing that the bank might sustain a loss or more readily obtain payment whatever the decree.

The claim of disqualification is unfounded.

Jurisdiction to appoint receiver. Counsel do not agree upon which receivership has priority.

When the receivers in the original proceeding were discharged by order of December 9, 1929, the corporation became its own master, as though no receiver had been appointed. In case of conflict, priority generally follows the decree of the court which first obtains jurisdiction of the parties and subject-matter. 53 C. J. p. 50. It does not rest upon a race between courts to final decree. Although different receivers may be appointed in different proceedings (53 C. J. p. 76), such conflict should be avoided, especially as between branches of the same court.

Judge Gadola appointed receivers before the petition heard by Judge Parker was filed. The latter petition did not set up grounds nor pray for continuance of the original receivership with control of the corporation. Nor was such continuance necessary to the purpose of the proceeding, with the possible exception of suing out execution and collecting the judgment against Lande.

In the suit before Judge Gadola, sufficient misappropriation and mismanagement by those in control of the corporation were shown to justify receivership, at least until the corporation is reimbursed and honest management made probable.

The receivers appointed by Judge Gadola have priority as to control of the corporation.

When were the original receivers discharged? Counsel stress this question because the accounting in the two proceedings overlapped, and the findings are not consistent as to the overlapping period.

Judge Gadola, taking the position that the original receivership closed to all intents and purposes in December, 1928, when the first petition for discharge was prepared and sent to Judge Parker, considered the accounts of 1929, but denied the Farbers right to accounting prior thereto on the ground the remedy was in the original proceeding. Judge Parker passed upon transactions in the same period of 1929 because the formal order of discharge was not made until December, 1929.

Both original receivers and the Farbers considered that the receivership practically terminated in or about December, 1928, as a matter of fact, although they knew that the order of discharge had not been signed and they or their attorney often inquired about it until the summer of 1929. They were uncertain as to procedure for a time, as, during the period, some checks were signed by officers of the corporation, some by the receivers and some by both. Padded pay roll checks running from October, 1928, to April, 1929, were signed by the receivers. However, during most of the year the corporation was conducted as a private concern by the officers with Lande assisting, not as under receivership. While the time of the transition is not

definite, we think April 1st, accepted by Judge Parker as a date for allowing change of compensation for receivers, is near enough for practical purposes.

The Farbers and the corporation cannot attack the jurisdiction of Judge Gadola to consider the events of 1929, because, by cross-bill, they asked for an accounting against Lande for the whole period of receivership and presented the transactions of 1929 to the court for determination. On the other hand, Lande interposed no objection to the jurisdiction of Judge Parker to order an accounting as receiver. As to the events of 1929, Lande's contention before Judge Parker was that the findings of Judge Gadola were *res judicata.*

The conflict of jurisdiction presents only a technical question, because both decrees have been appealed and both accountings are before us. Instead of dividing the present accountings between the decrees upon the basis of technical jurisdiction, we think it better to divide them according to logical jurisdiction—the decree of Judge Parker to cover Lande's acts as receiver and the decree of Judge Gadola to encompass other transactions, with the dividing date April 1st, as nearly as may be convenient.

Is Lande a stockholder of the corporation? The contention is that, as VanDoorn sold his stock during the hearing, and Lande was never a stockholder, Judge Gadola had no jurisdiction to enter decree, because the suit could be maintained to decree only by a stockholder.

Lande's stock ownership rests upon the records of the meeting of stockholders of December 30, 1929:

"John E. Farber and Edward E. Farber agreed at this time to give to Louis Lande and George Taft,

gratis, 500 shares each of their individual holdings of the capital stock of the J. E. Farber Company, Incorporated.

"John E. Farber proposed the following names as a board of directors for the ensuing year: John E. Farber, George Taft, Edward E. Farber, Louis Lande, C. M. Van Benschoten.

"The motion was seconded by C. M. Van Benschoten, carried by a unanimous vote.

"F. E. Reeder moved that C. M. Van Benschoten be attorney for the corporation. This was seconded by George Taft, unanimous vote in favor."

The minutes were signed by Edward Farber as secretary. At that time each of the Farbers owned $131,000 worth of stock but no certificates had been issued for it. The only certificates issued had been to the other four stockholders, aggregating $4,000.

That the Farbers intended the minutes of the stockholders' meeting to constitute a present conveyance of stock to Lande and Taft, and the latter so accepted it, is clear from the words of the minutes "at this time," and because Lande and Taft were immediately recognized as stockholders by their being elected directors and by Taft seconding a motion, all with the participation of the legal adviser of the corporation. Because certificates for the Farber stock had never been issued, and the affairs of the corporation were conducted in an informal manner, the failure to issue formal certificates to Lande did not affect the transfer as between these litigants. We think the minutes of the meeting operated to transfer stock to Lande. *Auditor General* v. *Bassett's Estate*, 246 Mich. 440.

In Judge Gadola's decree it is stated that Lande owns $5,000 of stock. The record is not entirely definite in this respect, but there is testimony that later the capital was reduced to $27,500, and each

of the Farbers was allotted $11,500. The number of Lande's shares, therefore, must be proportioned to capital structure, and he is entitled to decree for certificates.

Accounting. Some general observations will obviate the necessity of extended reasons on the various items. The controversy is not alone between Lande and the Farbers. The concern of the court must be for innocent stockholders and creditors and to decree return of misappropriated assets for their benefit. It is not a defense to Lande or Farber that the other participated in peculations with him, nor will the court concern itself with apportioning liability for misappropriation between them on items where both participated in defrauding the corporation.

Receivers and officers of corporations who appropriate corporate moneys by irregular and devious devices cannot justify themselves by mere oral claim of honest application of the funds. Trickery of method implies dishonesty, and proof of honest disposition must be clear.

Where Lande acted as receiver, he must account as such. He cannot excuse unlawful acts because others received part of their benefits. Although the receivership was not conducted in a regular way, receivers cannot be permitted to plead irregularity as an excuse for neglect of duty. A receiver departs from proper procedure at his peril.

In our opinion, both decrees must be modified. We think a more workable result would be attained if counsel would stipulate to cover the cases with one decree. But, pending their consideration of the suggestion, we find the accounting as follows:

Voiland checks. In 1925, Celestine Voiland loaned the receiver $2,500. In January, 1926, two re-

ceivers' checks for $1,700 and $800, respectively, were drawn to her, indorsed in her name by the bookkeeper at Lande's order, and he deposited one to his account and apparently cashed the other. He testified that he delivered the money to John E. Farber for Miss Voiland. Farber denied this. Lande's testimony upon the payment to Farber was confusing. Later he issued another check to Miss Voiland for $1,500 and gave it to Farber for her. It must be held that Lande has not made a proper accounting for the item of $2,500 and is chargeable with it.

American Iron & Metal Company check. In August, 1926, Lande issued a check for $1,000 to the American Iron & Metal Company. No invoice for the account can be found. There is no record of purchase of goods for the corporation from such company. It appears there was no such company, and Lande did not produce evidence of the existence of the person with whom he claims he dealt, although he said he could produce him. He has not accounted for this item and is chargeable with it.

Settlement of creditors. In 1928, Lande drew $15,669.55 by means of fictitious invoices and compromised with the creditors. After liberal allowance for other items by Judge Parker, $1,096 is still unaccounted for, and Lande is chargeable with it.

Padded payrolls. From October, 1928, to April, 1929, payroll checks for $5,036, all, or substantially all, signed by the receivers, were issued by order of Lande. The payees had not worked for the corporation, and Lande obtained the money on the checks. He states he gave some of the money to John Farber for expenses and to bribe purchasing agents. Farber received at least four of the checks. We cannot find proof by Lande that any part of this money

was expended for legitimate purposes of the corporation; and, because of the manner in which the money was drawn, he must be charged with the whole amount on receivership account.

As further accounting must be had in the suit before Judge Gadola, the amounts paid to John Farber by Lande should be credited to Lande if it is shown on further hearing that they were expended for proper purposes of the corporation. If it is not so shown, such amounts as Farber received should be charged against both Lande and Farber until the corporation is reimbursed.

Scrap. The business of the corporation is the manufacture of screw machine products and tool and die work. The screws, bolts, etc., were fabricated from metal bars in automatic machines. There was a waste, of shavings and bar ends, of about 50 per cent.

For several years before the receivership, Lande purchased all the scrap, and in return sold the Farbers automatic machines, discarded by automobile manufacturers, tool steel, piping, structural steel, and various other articles which he had purchased as junk. No book entries were made of such items. Before the receivership, Lande and one of the Farbers made an adjustment each month at junk prices. Sometimes the balance was paid and sometimes it was carried to the next month on slips.

This method of handling the scrap was carried into the receivership, except that adjustments were made monthly between Lande and the bookkeeper, usually in the presence of Edward Farber. So well understood was the mutual furnishing of metals that the men at the Farber plant would take materials from Lande's junk yard without his order and report it at Farber's office for monthly adjustment.

The testimony upon the charges and credits was not definite. Upon estimates, Judge Parker found a charge against Lande for scrap, with credit for materials furnished.

We do not think the Farbers should profit from the transaction at Lande's expense. The manner of disposing of scrap and making settlement was known to the Farbers at the time. It was not something they discovered after the receivership closed. They made no complaint until Lande filed suit for an accounting against them. The records have been destroyed. With full knowledge of the situation, the corporation, over the signatures of the Farbers, consented to the discharge of the receivers without accounting for the scrap. It would be inequitable, at this late date and under such circumstances, to permit the Farbers to profit from a condition for which they were largely responsible. This item is rejected.

Modification of decrees. Except as otherwise indicated, the decree of Judge Parker will be modified to cover only the above items. The following items will be included in the modified form of Judge Gadola's decree:

Purchase of property. September, 1929, Lande appropriated $3,000 to purchase property in Detroit, taking contract to himself as trustee. He states the Farbers were with him in the transaction. They denied it. John Farber was with him in the attorney's office when the contract was drafted. The deal was not consummated and only $1,000 of the money recovered. Both Lande and John Farber are chargeable with the balance of $2,000. Another charge of $550 was made in the decree against Lande for corporate moneys expended for legal services in this transaction, but as counsel did not point out testi-

mony or items to sustain the charge, it cannot be allowed.

Copper. In 1929, Lande bought $398.85 worth of copper for himself with corporate funds. He undertook to show repayment but did not prove that the money was returned to the corporation. He is chargeable with this item.

Salaries. We agree with both judges that salaries to the Farbers and Lande of $1,000 per month were excessive, that $500 per month was ample, and the corporation is entitled to the return of the excess. Lande, however, will draw only the compensation of $300 per month, allowed as receiver to April 1, 1929, when the transition to private management seems to have been substantially made by the parties. We think the better arrangement would be for Judge Parker's decree to cover adjustment of Lande's salary to April 1, 1929, and Judge Gadola's decree to include the period subsequent thereto.

Patents. We agree with Judge Gadola that John E. Farber owns the patent rights which Lande claimed belonged to the corporation.

John E. Farber's claim. At the time of settlement with creditors, the corporation owed Farber $4,100, since reduced by credits. This claim was not paid nor compromised. Lande also had a claim which he paid in full. Farber's account was regularly carried upon the books and we hold he is entitled to the benefit of it.

Conclusion. The records are large and complicated. Much testimony was taken and a multitude of checks and accounts introduced. The testimony suggests that the Farbers and Lande have used corporate moneys and labor and property for their personal benefit other than the items mentioned above. Judge Gadola's decree orders the receivers

to institute proper proceedings against Lande and the Farbers to recover all moneys of the corporation improperly taken by them. We approve this provision, because the present litigation has been principally at their suit, the Farbers have had control of the books, and innocent stockholders and creditors are entitled to investigation by disinterested officers of the court and return of misappropriated assets by whomsoever taken.

The scope of such proceedings by the receivers should be stated in the decree. As to the Farbers, they may cover the whole period from the inception of the first receivership. As to Lande, they will date from April 1, 1929. However, should investigation disclose misappropriation by Lande prior to that date, and not covered by the accounting herein, the receivers will be authorized to present petition to Judge Parker for further accounting by Lande in connection therewith.

In Judge Gadola's suit, the charges against the Farbers and Lande should be made liens on their stock in the corporation. Any sums found expended by the corporation in connection with John Farber's patents and not properly accounted for should be made lien thereon.

The decrees will be modified in accordance with this opinion, without costs.

CLARK, C. J., and McDONALD, POTTER, SHARPE, FEAD, WIEST, and BUTZEL, JJ., concurred.