WILL OF PRANGE: PRANGE and others, Executors, Appellants, vs. WISCONSIN TAX COMMISSION and another, Respondents.

*April 29—June 11, 1930.*

For the appellants there were briefs by *Bowler & Bowler* of Sheboygan, attorneys, and *Miller, Mack & Fairchild* of Milwaukee of counsel, and oral argument by *Paul R. Newcomb* of Milwaukee and *George R. Currie* of Sheboygan.

For the respondents there was a brief by the *Attorney General, F. C. Seibold,* assistant attorney general, and *George D. Spohn,* inheritance tax counsel, and oral argument by *Mr. Seibold* and *Mr. Spohn.*

FRITZ, J. Subsequent to the appeal herein, respondents served notice for a review and reversal of that part of the order appealed from which held that a bequest of $2,000 to the H. C. Prange Mutual Aid Society is exempt from the payment of inheritance tax. As appellants now concede that that bequest is subject to an inheritance tax, that part of the order is reversed, with directions to order the payment of the tax on that bequest.

H. C. Prange died testate on January 25, 1928, leaving an estate which was appraised at $955,456.09, of which the sum of $248,137.50 was for 1,950 shares of stock of the H. C. Prange Real Estate Company (hereinafter called the

"corporation"). The will did not refer to or expressly dispose of that stock. That corporation was organized by H. C. Prange on February 1, 1924, with an authorized capital stock of $300,000, consisting of 3,000 shares of $100 each. H. C. Prange conveyed real estate valued at $170,000 for 1,700 shares, of which 1,630 were issued to him, twenty shares to his wife, and ten shares to each of his five children. During the remainder of his lifetime he was president and a director, and two of his children constituted the other directors and officers of the corporation. He advanced money to the corporation for building construction, and on January 13, 1925, 300 shares were issued to him for advancements of $30,000; and when he died, $21,946 were still owing to him on that account.

On January 19, 1925, he executed a trust agreement, by and under which he, as donor, transferred and delivered to the Security National Bank, as trustee, the 1,950 shares which he and his wife had, to be held by the trustees in trust for thirty years, with power to invest, disburse, and apply the principal and income, and to distribute the latter annually during that period, and, at the termination thereof, the corpus of the trust, among his five children or their issue, in equal shares. The donor retained no right to revoke or modify the trust, and no right or interest whatever in the dividends or income of the corporation, excepting that he reserved to himself the right to vote those shares during his lifetime, and provided that thereafter that right to vote should vest in the beneficiaries of the trust.

It was admitted on the trial that the gifts of the shares and interest under the trust agreement were not made in anticipation of death. There was undisputed evidence that the donor's purpose was to give his children a present income, with an opportunity to acquire knowledge and assume responsibility in managing the property, subject to correction if they should err, during his lifetime, by his exercise of the reserved voting power.

The children also transferred their fifty shares to the trustee. The latter never received notice of or participated in any stockholders' meeting, and, aside from executing the trust agreement and receiving the certificates of stock, never performed any act or received any compensation under the agreement.

The corporation's net income for the years 1924 to 1927 was expended for improvements. The officers had agreed not to declare any dividends until the advancements by H. C. Prange were repaid. No compensation was paid to any officer or director, and no dividends were declared prior to his death.

The learned county judge concluded that, as during the lifetime of the donor the management of the corporation remained in him, the trust was but a naked trust, without any duties, power, or control in the trustee excepting the mere holding of the stock, and that the rights of the beneficiaries did not arise until the donor's death; and that therefore the value of the stock at the time of such death should be added to the value of the other property which the beneficiaries received under the donor's will, in determining the state inheritance tax.

As it is conceded that the donor's transfer of the stock was not made in contemplation of death, the transfer was subject to an inheritance tax under sec. 72.01, Stats., only if it was "intended to take effect in possession or enjoyment at or after" the donor's death. The test to be applied, in order to determine whether or not the transfer was intended to take effect in possession or enjoyment at or after such death, is whether the donor reserved to himself any beneficial or economic interest, or any right thereafter to otherwise dispose of any such interest, in the corpus of the trust, for the benefit of himself or otherwise. *Fuller v. Bassett's Estate*, 246 Mich. 440, 224 N. W. 639; *Reinecke v. Northern Trust Co.* 278 U. S. 339, 49 Sup. Ct. 123; *Cochrane's Estate,* 117 Misc. 18, 190 N. Y. Supp. 895.

In the case at bar the transfer of the corpus of the trust, including the income thereof, was completed and irrevocable when the donor executed the agreement and the stock was delivered pursuant thereto. Then, irrevocably, title and possession vested in the trustee for the use of the beneficiaries and enjoyment of the benefits vested in them. Then the donor entirely divested himself of all right or power of future disposition of the stock and of all beneficial or economic interest therein. *Marshall's Estate,* 179 Minn. 233, 228 N. W. 920, 924; *Henry v. U. S.* 251 U. S. 393, 395, 40 Sup. Ct. 185, 186. His only reservation was the incidental right to vote the stock during his lifetime. He did not intend or attempt to exercise that incidental right for the benefit of himself or any one else than the beneficiaries of the trust; and he could not lawfully do that so as to obtain for himself, or any other person than the beneficiaries of the trust, any economic benefit attributable to or resulting from ownership of the stock, to the prejudice or impairment of the rights of stockholders. Such reservation of the mere power of voting shares of stock did not save to the donor control over the economic benefit of the stock which he transferred in trust. The following statement in *Reinecke v. Northern Trust Co.* 278 U. S. 339, 49 Sup. Ct. 123, is squarely applicable to the donor's reservation of the right to vote the stock, in the case at bar:

"Nor did the reserved powers of management of the trusts save to decedent any control over the economic benefits or the enjoyment of the property. He would equally have reserved all these powers and others had he made himself the trustee, but the transfer would not for that reason have been incomplete. The shifting of the economic interest in the trust property which was the subject of the tax was thus complete as soon as the trust was made. His power to recall the property and of control over it for his own benefit then ceased and as the trusts were not made in contemplation of death, the reserved powers do not serve to distinguish them from any other gift *inter vivos* not subject to the tax." (Page 346.)

See, also, *Fuller v. Bassett's Estate, supra; Marshall's Estate, supra; Kountze's Estate,* 120 Misc. 289, 198 N. Y. Supp. 442; *Ferris' Estate,* 94 N. J. Eq. 726, 121 Atl. 692.

The decision in *Wallace's Estate* (Oreg.) 282 Pac. 760, is distinguishable from the case at bar, in that, as stated in the opinion at page 762, the donor, upon organizing a corporation to which he transferred real estate, reserved to himself for life the entire beneficial interest therein; and the transferees of the stock of the corporation were not to come into the enjoyment of any of the rights of stockholders until the donor's death. Those limitations, which prevented the corporation from coming into possession and enjoyment of the real estate, and which deprived the transferees of their rights of stockholders during the donor's lifetime, were held to subject the transfer to an inheritance tax. In the case at bar there was no reservation attached to the donor's conveyance of his real estate to the corporation, and the only limitation upon the beneficiaries' rights as stockholders was the reservation of the right to vote the stock.

In the case of *Ferris' Estate, supra,* it was held that the inheritance tax should be assessed only in respect to the value of the power to vote, which the donor retained. The mere right to vote stock which is owned by another may, under some circumstances, have pecuniary value to one who, in connection with voting other shares which he owns, can thereby retain corporate control himself, or prevent such control by another owner. However, in view of the circumstances which existed between the parties in this matter, and the manner in which the donor apparently intended to, and did in fact, unselfishly exercise that reserved right to vote wholly for the benefit of his children, the termination of that right upon his death did not result in enhancing the value of the property which had theretofore become vested in the beneficiaries of the trust. The value of their holdings was not in fact increased upon the donor's death. As there was no transfer of additional value at that time, there is no

basis for an inheritance tax on the value of the stock, or of the donor's reserved right to vote.

*By the Court.*—Orders reversed in so far as they relate to the appraisal of the 1,950 shares of stock of the H. C. Prange Real Estate Company for inheritance tax purposes; and to the exemption from taxation of the bequest of $2,000 to the H. C. Prange Mutual Aid Society, with directions to order the payment of an inheritance tax on that bequest.