Estate of Stone: State, Appellant, v. Stone and another, Executors, Respondents.

*March 7—June 7, 1960.*

468

For the appellant the cause was argued by *E. Weston Wood,* assistant attorney general, attorney, and *Richard E. Williams,* inheritance tax counsel, of counsel, with whom on the brief were *John W. Reynolds,* attorney general, and *Harold H. Persons,* assistant attorney general.

For the respondents there were briefs by *Wood, Brady, Tyrrell & Bruce,* and oral argument by *T. L. Tolan, Jr.,* all of Milwaukee.

FAIRCHILD, J. Sec. 72.01, Stats., imposes a tax upon any transfer of property or interest therein or income therefrom in the cases set forth in the subsections. Sub. (3) (b) specifies the case: "When a transfer is of property, made without an adequate and full consideration in money or money's worth . . . by . . . gift, intended to take effect

in possession or enjoyment at or after the death of the . . . donor, . . ."

Mr. Stone, by his election, altered the rights which he would presumably have at and after retirement in the trust fund created by the company. If he did not elect the joint and survivor option, he would, upon retirement, become entitled to an annuity in the full amount provided in the plan for one with his past earnings and length of service. There would be no benefit payable to his estate or any beneficiary after his death, whether it occurred before or after retirement. His election so altered his presumptive interest in the fund that after retirement he would receive an annuity in a reduced amount. His wife would, if she survived him, receive the same (reduced) annuity. Should he die before retirement, his wife, if she survived him, would receive the same (reduced) annuity he would have received had retirement benefits been computed at the time he died. Presumably the annuity provided for their joint lives and the life of the survivor was the actuarially determined equivalent of the full annuity provided for the life of the employee only. Presumably the same amount of trust assets would be necessary to provide either. It is clear that however one may describe the interest of his wife in the fund, she would not have received it but for his act of election.

It is the state's position that Mr. Stone's exercise of his option was a transfer of property which fulfilled the specifications of sec. 72.01 (3) (b), Stats., and was therefore taxable.

*Transfer.* We have no hesitancy in deciding that Mr. Stone's election of a joint and survivor option was a "transfer" of whatever interest he had in the trust fund, intended to take effect in possession or enjoyment at his death. With respect to the question of whether the election constituted a transfer, this case is different from the situation presented in *Estate of Sweet* (1955), 270 Wis. 256, 70

N. W. (2d) 645. There, this court decided that upon the death of an employee member of the federal civil-service retirement system, the present worth of annuity benefits payable to his widow was not subject to tax as having been transferred under conditions specified in sec. 72.01 (3) (b), Stats. The important difference between the two situations is that Mrs. Sweet became entitled to the annuity by the operation of the statute which controlled the retirement system, not because the employee exercised any option in her favor. The federal retirement system gave Mr. Sweet no power to create, or alter her status as beneficiary. Mr. Stone, however, was free to retain all the benefits provided under the retirement plan for himself, or he could, by reducing his own benefits, provide benefits to his wife if she survived.

An employee's choice under a retirement system of a reduced annuity for himself plus an annuity for his wife if she survived him, in lieu of a larger annuity for his life only was held to be a transfer intended to take effect at death. *Estate of Endemann* (1954), 307 N. Y. 100, 120 N. E. (2d) 514. The retirement system involved was different from the one at hand in a number of ways, including the fact that the employees contributed, but the ruling that the choice of a joint and survivor annuity constituted a transfer is significant. The same principle was applied to an exercise of an option under a noncontributory plan in *Estate of Harbord* (1954), 305 N. Y. 622, 132 N. Y. Supp. (2d) 647.

*Property interest.* A question presented here, but not presented in the *Sweet Case,* is whether Mr. Stone's interest in the trust fund, a part of which he transferred to his wife as of his death, constituted property, an interest therein, or income therefrom. Counsel for the executors forcefully argue that it was not property because the company reserved the power to amend or terminate the plan, and the plan gave him no vested right except such rights, if any, as might accrue upon retirement. There are authorities supporting this view.

*Dimock v. Corwin* (1937), 19 Fed. Supp. 56; 48 Columbia Law Review, 393, 395. See discussion of both "transfer" and "property," 6 Stanford Law Review, 473.

Nevertheless, we conclude that for the purpose of sec. 72.01 (3) (b), Stats., Mr. Stone's interest in the trust, although defeasible upon certain contingencies, constituted an interest in property.

The company, in creating and funding its retirement plan, aimed to provide additional compensation to its salaried employees. Undoubtedly the existence of the plan was important to the latter, and the expected benefits a significant motivation for continued loyal service. By amendment, the company could reduce its contributions prospectively, but could not recover the funds theretofore contributed. It is highly unlikely that the company would terminate the plan, or amend it so as to reduce the benefits unless virtually forced to do so by business reverses, or other circumstances beyond its control. Its reservation of power to amend and terminate was doubtless for the purpose of protecting itself from such adverse circumstances, rather than from any contemplation that it would reduce benefits as a result of whim or caprice. We are aware that reservations of this type are common in employees' pension and profit-sharing plans and trusts. At the time Mr. Stone died, it became certain that no reduction which the company was privileged to make had been made, and we assume that Mrs. Stone's claim for benefits after his death would be entitled to the same priority in event of termination of the plan which Mr. Stone's claim for retirement benefits would have enjoyed had he retired.

Funded retirement plans are widely used. They are motivated by a complex of purposes:

". . . the need to provide for the future of employees in these days of high taxes and low interest rates, the need to secure increased employee interest in production, the aid which plans afford in attracting and keeping good men and the desirability of a more-efficient solution of the problem of

retiring superannuated employees." 48 Columbia Law Review, 393.

"The familiar picture of transferring one's accumulated wealth through the use of traditional *inter vivos* and testamentary devices has been changed: One chooses employment under which a present share of earned income is replaced by a claim to future consumption. Retirement, disability, or untimely death must be anticipated, and provided for." 11 Stanford Law Review, 242, 244.

"The great growth of retirement plans in this country is attributable in large part, at least, to the favorable tax treatment that the federal law grants to that somewhat artificial creature known as a qualified retirement plan. If the plan qualifies, contributions by the employer to the trust or insurance company are deductible when made within the prescribed limits. The income of the trust is tax exempt, and the employee pays no tax until he receives distribution. Lump-sum distributions are taxable as long-term capital gains if made on account of termination of service or death after termination. Where securities of the employer are distributed, any appreciation is not taxable until it is realized." 36 Trust Bulletin, November, 1956, pp. 36, 37.

In an article entitled "The New Inheritance: Employee Benefit Plans as a Wealth Devolution Device," 11 Stanford Law Review, 242, the authors point out some of the difficulties in applying traditional concepts to such plans. In the case before us, the assets in the trust fund devoted to carrying out the plan are property. In at least a broad sense, Mr. Stone had a valuable interest in the fund. This interest could have been destroyed, or defeated by various contingencies. The question before us is whether the existence of these contingencies prevents treatment of the interest transferred to Mrs. Stone as "property" under sec. 72.01 (3) (b), Stats. The remoteness of the contingencies convinces us that he had a contingent or defeasible property interest, rather than a mere expectancy that payments would be made upon his retirement or death.

The supreme court of errors of Connecticut has decided that for inheritance-tax purposes, an interest under a retirement plan is property, notwithstanding the reservation by the employer of the right to amend or terminate. *Dolak v. Sullivan* (1958), 145 Conn. 497, 144 Atl. (2d) 312, 315. The retirement plan was not funded, as here, but the court held that (p. 503):

"At the very least, the retirement plan amounted to a contract between the decedent and the company, the obligations under which were subject to extinguishment, in whole or in part, upon the happening of a condition subsequent in the form of the exercise, by the company, of its reserved power of discontinuance or modification, if and to the extent that such power legally existed."

The existence of a trust fund for the fulfilment of the plan makes the case before us a stronger one.

*Effect of Sweet decision.* The executors argue that the *Sweet* decision requires us to affirm the county court in this case. As previously stated, we consider *Sweet* a determination that under the terms of the retirement system there involved there was no transfer by the deceased employee. That this was the basic issue is pointed up by the analysis by Mr. Justice CURRIE in dissent to the effect that the employee by voluntarily rendering services for the government under the terms of his employment, including the terms of the retirement system, effected the transfer of an interest to his wife. The majority, however, thought otherwise, and decided that such creation of the wife's contingent right to receive benefits did not constitute a transfer. While there was discussion in the majority opinion in *Sweet* which might lead to a broader conclusion, we consider that the *Sweet* decision is authority only as to benefits which, under a particular retirement plan, are payable to another upon the death of the employee without any option having been given to the employee as to the distribution of such benefits.

*Legislative construction.* Next, the executors assert that the legislature's rejection of bills on this subject in both the 1957 and 1959 sessions shows its intention not to impose an inheritance tax on the transfer of benefits such as here involved. In the 1957 session, Bill No. 380, A., was introduced with explanatory and fiscal notes by the department of taxation. The bill would have created sec. 72.01 (3) (c), Stats., providing, in substance, that death benefits under retirement plans would be taxable unless expressly exempted. The notes read:

"Explanatory note to 72.01 (3) (c): Sec. 72.01 (3) (c) is intended to clarify sec. 72.01 (3) (b) in regard to the taxation of benefits going to heirs or beneficiaries of a decedent from retirement systems or similar plans, and to remove the effect of the decision of the supreme court in the *Estate of Sweet,* 270 Wis. 256.

"Fiscal note: The clarification of sec. 72.01 (3) (b) by the addition of sec. 72.01 (3) (c) will not have too great an immediate effect on revenues.

"However, as the benefits paid under retirement systems and similar plans increase in the years to come the effect on revenue will be increasingly greater. Most of these benefits have been subjected to tax in the past, but since the decision in the *Estate of Sweet,* 270 Wis. 256, there has been considerable confusion in the minds of many members of the bar as to whether annuities and other benefits under retirement plans are subject to tax or not. This has led to many problems and difficulties in the administration of the law, and undoubtedly some tax avoidance because of the fact that pension payments to heirs and beneficiaries have not been reported because people considered them to be exempt from the tax.

"With the passage of the clarification of the statute, and the passage of sec. 72.18 (8b) requiring the reporting of payments under these plans, it is estimated that the increase in revenue to the state from inheritance taxes will be in excess of $25,000 annually during the next biennium."

The bill was passed by the assembly, but nonconcurred in by the senate. The same proposal was one of several em-

bodied in Bill No. 944, A., of the 1959 session. This bill was passed by the assembly, but was nonconcurred in by the senate.

We do not read these results as a legislative construction that devolution of pension benefits upon a beneficiary is never to be considered a transfer under sec. 72.01 (3) (b), Stats. The *Sweet* decision had determined that the creation of a beneficiary's interest under certain types of retirement systems did not constitute a taxable transfer. It evidently cast doubt upon whether an employee's designation of a beneficiary under other types of plans would constitute such transfer. This court had held that a bonus paid by an employer to the widow of an employee, without a contractual obligation to do so, was not a taxable transfer. *Estate of Stevens* (1954), 266 Wis. 331, 63 N. W. (2d) 732. The 1957 bill would apparently have changed the law as declared in *Stevens* and *Sweet* as well as affirming taxability in situations differing from the ones considered in those two cases. The refusal of the legislature to enact the bill may have evidenced approval of *Stevens* and *Sweet* without being a legislative declaration that none of the benefits enumerated were subject to inheritance tax. The same can be said of the 1959 bill, with the addition that it also contained other proposals which may have been deemed undesirable. Legislative refusal expressly to affirm taxability is not equivalent to an express exemption.

In studying this case, we noted several sections of the statutes which give special treatment to employees' retirement funds. We asked counsel for supplemental briefs as to whether these sections demonstrated any legislative intent material to the questions before us. We withheld decision until counsel had an opportunity to file, and we to consider those briefs.

Sec. 71.01 (3) (e), Stats., provides for special income-tax treatment of employees' trusts meeting certain requirements. It also provides that an amount distributed to a

"distributee" shall be taxable to "him" in that year to the extent that it exceeds the amount paid in by "him." If that paragraph imposed an income tax on all the payments received from such a trust by a beneficiary other than the employee, one might argue an implication of a legislative intent that no inheritance tax be imposed on the value of the benefits as of the employee's date of death. Both counsel took the position that the paragraph did not do so. The attorney general advises further that since the enactment of the paragraph in 1945, the department of taxation has consistently interpreted "distributee" as including employees and retired or former employees, but not dependents or designated beneficiaries of an employee.

Enactment, therefore, of sec. 71.01 (3) (e), Stats., demonstrates a degree of legislative favor for employees' trusts, but is as consistent with imposition of an inheritance tax as with exemption therefrom.

Sec. 272.18 (31) (c), Stats., provides that an interest in an employee's trust as therein defined is exempt from execution, and certain other remedies. While this again demonstrates a degree of legislative favor for such trusts and the benefits therefrom, it has no direct bearing on the question of taxation.

Sec. 72.04 (6), Stats., expressly exempts interests in certain public employee retirement systems from inheritance tax. Such exemption is at least as consistent with taxability of interest in other retirement systems as with nontaxability.

*By the Court.*—Order reversed; cause remanded for further proceedings not inconsistent with the opinion filed herein.