ESTATE OF KING: STATE, Appellant, v. MARINE NATIONAL EXCHANGE BANK OF MILWAUKEE, Executor, Respondent.

*September 13—October 5, 1965.*

For the appellant the cause was argued by *E. Weston Wood,* assistant attorney general, with whom on the brief were *Bronson C. La Follette,* attorney general, *Harold H. Persons,* assistant attorney general, attorneys, and *Richard E. Williams,* inheritance tax counsel, of counsel.

For the respondent there was a brief by *Shea, Hoyt & Greene,* and oral argument by *Paul F. Meissner,* all of Milwaukee.

HEFFERNAN, J.    The sole question before the court is the taxability of the pension payments to be made to Mrs. King. The state contends that a tax is imposed by sec. 72.01 (3) (b), Stats.:

"When a transfer is of property, made without an adequate and full consideration in money or money's worth . . . by . . . gift, intended to take effect in possession or enjoyment at or after the death of the . . . donor, . . ."

It is our conclusion that this case is controlled by the *Estate of Sweet* (1955), 270 Wis. 256, 70 N. W. (2d) 645. We there held that no tax was assessable against a widow's pension provided for by the Federal Employees' Pension Act, where the pension, by the terms of the statute, was payable after the death of the employee only to the wife. Our court concluded that there would be no tax when "the federal

retirement system prescribes the beneficiary and the employee cannot change it." *Estate of Sweet, supra,* at page 262.

The principles upon which the *Estate of Sweet* was decided were amplified in *Estate of Stone* (1960), 10 Wis. (2d) 467, 103 N. W. (2d) 663.

In *Stone* the decedent elected to come under a "joint and survivor option" of the trust agreement. Under the terms of this option, Stone elected to receive a reduced pension during his lifetime, and by so doing he triggered the provision of the agreement that extended the payment of the pension to his widow for her lifetime following his death. In the *Stone Case* the decedent chose to forego some of the pension payments that might have been payable in his lifetime that the widow might receive benefits for her life. In the *Stone Case* this court said:

"We have no hesitancy in deciding that Mr. Stone's election of a joint and survivor option was a 'transfer' of whatever interest he had in the trust fund, . . ." *Estate of Stone, supra,* at page 470.

The facts in *Stone* were distinguished from those in *Sweet.* It was pointed out that Mr. Sweet had no option to designate his beneficiary or affect the amount to be paid after his death. The entire devolution of the pension was controlled by statute and was beyond Sweet's control. Stone, "however, was free to retain all the benefits . . . for himself, or he could, by reducing his own benefits, provide benefits to his wife if she survived." *Estate of Stone, supra,* at page 471.

The court summarized the *Sweet* holding by saying:

". . . we consider that the *Sweet* decision is authority only as to benefits which, under a particular retirement plan, are payable to another upon the death of the employee without any option having been given to the employee as to the distribution of such benefits." *Estate of Stone, supra,* at page 474.

It appears to us that, in this controlling particular, the facts in the case before us are substantially the same as in *Sweet*. The terms of the Journal pension trust agreement determine how the benefits of the trust are to be distributed to the retired employee and to his widow. No power or discretion is vested in the decedent to alter this distribution. This situation is different from that in *Stone,* and as in *Sweet* we deem that no transfer has been made by the decedent.

The attorney general, appearing for the state of Wisconsin, urges that we overrule the *Sweet* decision on the basis of the reasoning expressed by Mr. Justice CURRIE for the dissenters in *Sweet*. The dissenters therein took the position that "by voluntarily rendering services for the federal government under the terms of the employment . . . performed the acts which effected the transfer to his widow." *Estate of Sweet, supra,* at page 264. The dissent also pointed out that the pension payments were not in fact a gratuity, but were in fact additional compensation, the payment of which was deferred until retirement, and hence the fund to the extent of his interest was the property of the decedent.

The logic of the dissent has much to commend it, but we are not in a position to consider this question as an original proposition. Since the decision in *Sweet* in 1955, our position was clarified and re-enunciated in *Stone* in 1960. One commentator stated:

"When the *Stone* and *Sweet* cases are considered together, it is clear that there will not be a tax on the amount which the wife receives if the plan does not give the husband an option." 1961 Wisconsin Law Review, 153, 156.

The *Stone* opinion pointed out that the refusal of the legislature to affirm taxability is not the equivalent of an express tax exemption or an affirmance of the court's decision. Nevertheless, as set forth in *Stone,* the legislature has declined to alter the statute in order to eliminate the effect of

*Sweet,* neither has there been any legislative change since the *Stone Case* that would cast doubt upon the distinctions that were drawn therein.

It appears, therefore, that the legislative history of sec. 72.01 (3) (b), Stats., together with the interpretation that it has been given in *Sweet, Stone,* and the cases that preceded, would justify the analysis of the commentator quoted above.

This court has previously stated that it would depart from *stare decisis* in unintentional tort actions or in situations involving conduct that would not in the usual course of things be planned in advance and when it appeared that there were compelling policy reasons that the established court-made rule should be altered. *Kojis v. Doctors Hospital* (1961), 12 Wis. (2d) 367, 107 N. W. (2d) 131; *Holytz v. Milwaukee* (1962), 17 Wis. (2d) 26, 115 N. W. (2d) 618. As we said in *Wilcox v. Wilcox* (1965), 26 Wis. (2d) 617, 623, 133 N. W. (2d) 408:

> "The rules of *stare decisis* attempt to give certainty to our law, so conduct can be planned in light of foreseeable legal consequences. Certainty, however, is less relevant in the law of unintentional torts, where conduct is not planned, than in the law of contracts or, more particularly, in the law of real property."

Certainly we should apply a similar rationale when considering a reinterpretation of a statute involving inheritance taxes. While no precedent of this court is under all circumstances immune from re-examination, nevertheless, where a course of action is likely to be determined only after a considered examination of the existing case law, we are obviously more reluctant to disturb the posture of the law than where the conduct is of the spur of the moment. The entire field of estate planning presupposes a stability and continuity to the law that will enable a well-informed lawyer to predict the tax consequences of his client's conduct in

regard to various arrangements that may be devised for the disposition or transfer of his property.

We, therefore, cannot properly consider this problem *ab initio*. In the absence of a legislative change which would clearly make the transaction herein taxable, or in the absence of a showing of compelling policy reasons (and there has been no such showing) that our previous rulings have resulted in the inequitable or unfair administration of the inheritance-tax laws, we consider that this case is controlled by our previous decisions.

*By the Court.*—Order affirmed.