IN MATTER OF ESTATE OF STEVENS: STATE,
Appellant, v. FOSTER, Respondent.

*No. 75–121. Argued September 13, 1976.—Decided October 5, 1976.*
(Also reported in 245 N. W. 2d 673.)

For the appellant the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondent there was a brief by *Gerrit D. Foster* and *Michael, Best & Friedrich,* and oral argument by *Charles Jackson,* all of Milwaukee.

CONNOR T. HANSEN, J. The facts are stipulated and undisputed. We deem the following facts pertinent to this appeal:

Sally M. Stevens died November 24, 1970, and was the widow of William C. Stevens, who died May 15, 1939. William C. Stevens had seven life insurance policies with The Northwestern Mutual Life Insurance Company of Milwaukee with an aggregate value of $90,000, which he continued to own up to and including the time of his death. His wife, Sally M. Stevens, was named primary beneficiary, and his children, Virginia M. and Clifford Brooks Stevens, were named contingent beneficiaries, share and share alike, or the survivor, on all seven policies.

On February 17, 1937, William C. Stevens executed an option with the insurance company. The option modified the beneficiary clause by providing a minimum monthly payment for his widow, Sally M. Stevens, in the amount of $2.47 per $1,000 of the amount retained by the insurance company. The option also gave her the right of surrender and withdrawal of the principal.

During her lifetime, Sally M. Stevens received income from the $90,000 fund pursuant to the option. At no time during her life or by her will or other testamentary document did Sally M. Stevens execute any written document transferring any rights in and to the fund held by the insurance company, nor did she release or renounce any of her rights thereunder. At no time during her life did Sally M. Stevens exercise her rights of surrender and withdrawal over the fund.

The full amount of the face value of the said policies, less a $10,000 exemption, was subjected to inheritance tax by the State of Wisconsin in the estate of William C. Stevens.

After the death of Sally M. Stevens, the insurance company, in accordance with the option exercised by William C. Stevens:

a) Paid $45,000 to Clifford Brooks Stevens; and

b) Agreed with Virginia M. Stevens (Feld) to retain the remaining $45,000 for her account on interest.

The effect of the order of the county court was to determine that the monies paid to Clifford Brooks Stevens and Virginia M. Stevens (Feld) by the insurance company after the death of Sally M. Stevens were not subject to an inheritance tax in the administration of her estate.

The issue in the case is as follows:

When the primary beneficiary of $90,000 insurance proceeds from her husband's life insurance policies who enjoyed settlement options executed by her husband which included the privilege of surrender and withdrawal of those proceeds from a fund held by the insurance company at any time during her lifetime, allowed her children to take the $90,000 at her death as contingent beneficiaries named by her husband by not exercising or renouncing her rights thereto, is said $90,000 included in her taxable estate for Wisconsin inheritance tax purposes?

██ ██ In this state the inheritance tax is not a tax upon the right to give or transfer, determined by the value of the estate, as is the federal estate tax. Rather, it is a tax upon the right to receive and is determined by each transfer or gift according to the relationship of the parties, rate and amount, although it is collected through the personal representative of the estate. *Nunnemacher v. State* (1906), 129 Wis. 190, 108 N.W. 627; *Estate of Bauknecht* (1971), 49 Wis. 2d 392, 395, 396, 182 N.W. 2d 238. It is a tax which is based upon a "transfer" as defined by statute, and the tax is collected through the estate of the transferor. It is not essential that such proceeds shall become a part of the deceased's estate upon her death in order to subject them to inheritance tax. *See: Will of Allis* (1921), 174 Wis. 527, 534, 184 N.W. 381.

Sec. 72.01, Stats. 1969, provides:

*"Subjects liable.* A tax shall be and is hereby imposed upon any transfer of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation, in the following cases, except as hereinafter provided: . . ."

Sec. 72.24 (2), Stats. 1969, defines "transfer" as follows:[1]

"(2) The word 'transfer' includes the passing of property or any interest therein in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift or appointment in the manner prescribed in ss. 72.01 to 72.24."

There is no dispute that the $90,000 fund constitutes property, nor can there be a dispute that a transfer within the meaning of sec. 72.24 (2), Stats. 1969, did occur, in that the "possession or enjoyment" of the $90,000 fund passed from Sally M. Stevens to the contingent beneficiaries, after her death. The question is whether the transfer occurred in a manner so as to result in the imposition of an inheritance tax. We are of the opinion that it did.

Sec. 72.01 (3) (b), Stats. 1969,[2] provides:

"(3) TRANSFERS IN CONTEMPLATION OF DEATH OR TO TAKE EFFECT AFTER DEATH. . . "(b) When a transfer is of property, made without an adequate and full consideration in money or money's worth by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, intended to take effect in possession or enjoyment at or after the

---

[1] Ch. 310, Laws of 1971, effective May 13, 1972, repealed and recreated ch. 72. "Transfer" is presently defined in sec. 72.01 (21), Stats.

[2] *See footnote* 1. Sec. 72.01 (3) (b), Stats. 1969, as it now reads, is sec. 72.12 (4).

death of the grantor, vendor or donor, including any transfer where the transferor has retained for his life or for any period not ending before his death: 1. The possession or enjoyment of, or the right to the income, or to economic benefit from, the property, or 2. the right, either alone or in conjunction with any person, to alter, amend, revoke or terminate such transfer, or to designate the beneficiary who shall possess or enjoy the property, or the income, or economic benefit therefrom."

During her lifetime, Sally M. Stevens enjoyed the absolute right and privilege of withdrawing the proceeds and/or surrendering her right to the fund. She chose to do neither, but rather elected to have the fund remain with the company and pass to the contingent beneficiaries. The contingent beneficiaries had no contractual right to the fund during the life of Sally M. Stevens. It was she who enjoyed the sole rights of withdrawal and surrender during her lifetime.

In *Estate of Stone* (1960), 10 Wis.2d 467, 103 N.W.2d 663, the employer had established for the benefits of his employees a federally qualified trust fund retirement plan. The employee, Stone, was granted the power under the plan to elect a "Joint and Survivor Option" whereby upon retirement, the annuity payments he would otherwise have been entitled to, would be reduced, such reduced payments payable to him for life and upon his death to his wife for life. Stone exercised the option, did not retire, but was eligible under the plan to do so and receive benefits. Upon his death his wife became entitled to payments of $602.50 per month for life. The State of Wisconsin sought to tax the present commuted value of such amounts under the inheritance tax laws, specifically sec. 72.01 (3) (b), Stats. The wife contended that there was no transfer within the meaning of that section.

This court held that the exercise of such an option by Stone was a transfer within the meaning of sec. 72.01

(3) (b), Stats. In so holding, the court distinguished and limited its earlier holding in *Estate of Sweet* (1955), 270 Wis. 256, 70 N.W.2d 645. In *Sweet,* the employee was a member of the federal civil service retirement system established pursuant to the Federal Civil Service Retirement Act. Under that Act, upon his retirement, the employee was to receive annuity benefits and upon his death such benefits would become payable to his widow. The employee had no choice whatever in the designation of who should receive benefits upon his death. The employee, Sweet, died and the state sought to tax under the inheritance tax laws, the present value of the annuity benefits payable to the widow under the provisions of the Act. The court there held that the present worth of the annuity benefits so paid to the widow was not subject to inheritance tax under sec. 72.01 (3) (b), Stats.

In distinguishing the two cases, the court in *Stone, supra,* stated at page 471:

". . . The important difference between the two situations is that Mrs. Sweet became entitled to the annuity by the operation of the statute which controlled the retirement system, not because the employee exercised any option in her favor. The federal retirement system gave Mr. Sweet no power to create, or alter her status as beneficiary. Mr. Stone, however, was free to retain all the benefits provided under the retirement plan for himself, or he could, by reducing his own benefits, provide benefits to his wife if she survived."

The court further limited the application of *Sweet,* stating at page 474:

". . . [W]e consider that the *Sweet* decision is authority only as to benefits which, under a particular retirement plan, are payable to another upon the death of the employee without any option having been given to the employee as to the distribution of such benefits."

In *Sweet*, the actual distribution of the benefits was controlled by federal statute. The same rationale and holding was applied to a private pension trust agreement in *Estate of King* (1965), 28 Wis.2d 431, 137 N.W.2d 122. In *King*, the terms of the Milwaukee Journal trust agreement determined how the benefits of the trust were to be distributed to the retired employee and his widow. No power or discretion was vested in the employee to alter such distribution. No statutory distribution was involved. When the state sought to impose an inheritance tax upon the commuted value of the pension to be paid to Mrs. King upon her husband's death, the court held that *Sweet* controlled and there was no transfer within the meaning of sec. 72.01 (3) (b), Stats., hence no inheritance tax. The court stated at page 435:

". . . The terms of the Journal pension trust agreement determine how the benefits of the trust are to be distributed to the retired employee and to his widow. No power or discretion is vested in the decedent to alter this distribution. This situation is different from that in *Stone*, and as in *Sweet* we deem that no transfer has been made by the decedent."

■ *Estate of Stone, supra,* leads to the conclusion that it is the existence of the right to affect the distribution of the assets and not the actual exercise of the right that is the controlling factor in deciding whether or not a transfer under sec. 72.01 (3) (b), Stats. 1969, has occurred. It is the existence of the power or discretion to alter the distribution that controls.[3]

This court, in *Montague v. State* (1916), 163 Wis. 58, 61, 157 N.W. 508, when considering the failure of a donee to exercise a power of appointment, held that a transfer resulting from the failure of the donee of the power to appoint shall be deemed to constitute a taxable transfer equally with a transfer resulting from an ap-

---

[3] *See* 1961 Wis. Law Review, pp. 153, 156.

pointment. The court so held because the failure to act equally affected the course of succession and until such failure was complete, the succession was not fully determined. *See also: Estate of Mueller* (1970), 47 Wis.2d 336, 177 N.W.2d 60.

While *Montague* and *Mueller* dealt with the power of appointment and while they interpreted what was in 1969, sec. 72.01 (5), Stats., their rationale is persuasive. It is the possession of a power to affect the course of succession that controls, not the act of exercising or not exercising that power.

Upon the death of her husband, Sally M. Stevens became entitled to the $90,000 proceeds of his life insurance policies as primary beneficiary. Her husband adopted, during his lifetime, a settlement option under which, upon his death, the insurance company would retain the $90,000 and pay monthly interest thereon to Sally M. Stevens at set rates. Sally M. Stevens had the power and discretion to surrender the policies at any time during her life and to withdraw all amounts retained by the insurance company. William C. Stevens also designated his children Virginia and Clifford as contingent beneficiaries. Under the terms of the policy as stipulated by the parties, the contingent beneficiaries were entitled to any such amounts as were remaining with the insurance company upon the death of Sally M. Stevens.

Thus, at any time during her life, Sally M. Stevens had the power and discretion to withdraw the full amount from the insurance company. Had she done so, the contingent beneficiaries would have received nothing directly from the insurance company. Failing to do so, the contingent beneficiaries, under the policy, became entitled to the full $90,000.

Sally M. Stevens' power and privilege of surrender and withdrawal was a power to alter the distribution of the insurance proceeds, or otherwise dispose of them. It was a power to affect the course of succession or the

use of the fund as she so desired. Exercised, it completely cut off the contingent beneficiaries. Not exercised, it allowed them the beneficial use and enjoyment of the proceeds. Her power to affect the benefits received by the contingent beneficiaries was no less of a power than that possessed and exercised by Stone with his option. It was no less of a power than that possessed and exercised or not exercised in *Montague* and *Mueller*.

Respondent contends that there was no transfer by Sally M. Stevens. The contention rests upon two assumptions; first, that the funds passed directly to the contingent beneficiaries by virtue of the original insurance contract; and second, that Sally performed no positive act of transfer—such being a requirement of sec. 72.01 (3) (b), Stats. 1969.

■ ■ Both assumptions fail. There is no question that a positive act may indeed effect a transfer. The question is whether such a positive act is required. No positive act is required to effect a transfer under sec. 72.01 (3) (b), Stats. 1969. If there exists a power in the transferor to alter the distribution of the benefits or to affect the succession thereof, then there is a transfer—whether the final succession or distribution was the result of a positive act or of passivity. Sally M. Stevens had just such a power. She failed to exercise it. Thus the assets of the fund reached the contingent beneficiaries because she chose not to exercise her rights of withdrawal. The transfer was from her and not from William C. Stevens.

Since we hold that a transfer under sec. 72.01 (3) (b), Stats. 1969, has occurred, the question becomes whether or not it was a transfer "intended to take effect in possession or enjoyment at or after the death of the grantor. . . ." The terms of the option indicate that it was. Upon the death of Sally M. Stevens, the contingent beneficiaries were to take. Only upon her election not to exercise her rights under the option and upon her

death would they become entitled to any of the proceeds then remaining in the fund.

As was stated in *Estate of Ogden* (1932), 209 Wis. 162, 167, 168, 244 N.W. 571:

". . . [W]here the right to possession and enjoyment is suspended until the donor's death, the interest does not reach the donee until that event occurs, . . ."

and

". . . Then and then only [at death] was there a shifting of the economic use and benefit of the property of the donee. . . ." *Ogden, supra,* 167.

■ The test for determining whether a transfer was intended to take effect at or after the death of the grantor was set down by the court in *Will of Prange* (1930), 201 Wis. 636, 231 N.W. 271. Although that case dealt with a trust agreement, the reasoning is pertinent. The court stated at page 639:

". . . The test to be applied, in order to determine whether or not the transfer was intended to take effect in possession or enjoyment at or after such death, is whether the donor reserved to himself any beneficial or economic interest, or any right thereafter to otherwise dispose of any such interest, in the corpus of the trust, for the benefit of himself or otherwise. . . ."

The transfer from Sally M. Stevens to the contingent beneficiaries was intended to take effect in possession or enjoyment at or after her death. She maintained control over and received interest payments from the fund during her lifetime, and the contingent beneficiaries, by the very terms of the insurance contract could only succeed to their interest upon her death.

■ We conclude the transfer falls within the provisions of sec. 72.01 (3) (b), Stats. 1969. The $90,000 should be included in the estate of Sally M. Stevens for inheritance tax purposes. A transfer of the funds to the

contingent beneficiaries occurred upon the death of Sally M. Stevens and such transfer is subject to inheritance tax under sec. 72.01 (3) (b), Stats. 1969.

*By the Court.*—Order reversed.