IN MATTER OF ESTATE of Vera IRISH, Deceased: STATE, Appellant, v. Clyde G. IRISH, Personal Representative, Respondent.

Supreme Court

*No. 76–716. Submitted on briefs March 28, 1979.—*
*Decided May 1, 1979.*
(Also reported in 277 N.W.2d 872.)

For the appellant the cause was submitted on the brief of *Bronson C. La Follette,* attorney general, and *Allan P. Hubbard,* assistant attorney general.

For the respondent the cause was submitted on the brief of *Ivars Kalnins, Mark H. Hoskins, Jr.,* and *Hoskins, Brown & Bonn* of Lancaster.

COFFEY, J. This appeal is taken from an April 7, 1977 Order Deciding A Tax Issue in the Estate of Vera Irish, entered in the probate branch of the Grant County Court, Judge WILLIAM L. REINECKE, presiding. Judge Reinecke, on stipulated facts, ordered real estate owned by the decedent be valued for purposes of inheritance tax at $46,800, the purchase price recited in an option agreement rather than the fair market value of $73,000 established by court appraisers at the time of the decedent's death.

On December 24, 1970 Vera Irish gave her son, Clyde Irish, an option to purchase her Grant County farm for $46,800 and in consideration of the option he paid $100 with the right to execute the option within seven years. On the date of Vera Irish's death, July 24, 1975, the option had not been exercised and the fair market value of the real estate had increased to $73,000.

The deceased's will executed on July 23, 1968, provided that the subject property or its sale proceeds were to be held in trust for the education of her grandson, Gary Irish. The provision for the educational trust extended only until he reached his 25th year. The distribution of taxable estate schedules reflects that the grandson received no distributive share of the estate. Thus, Clyde Irish, as residual beneficiary, was listed as receiving all the real property in the estate.

Judge Reinecke found that as a matter of law the $46,800 purchase price of the farm during the term of the seven year option was full and adequate consideration. The lower court reasoned that an option is a "gamble, the price paid for the option is a bet on the future." He noted that if the value goes up the optionee

wins and conversely, if the property value decreases, he loses on the gamble. In this case, the court concluded that while the odds favored Clyde Irish, it was not "such a sure thing" that the property would increase in value. He also found there was nothing in the record to infer that Mrs. Irish intended that possession and enjoyment of the property be delayed until after her death. To the contrary, under the terms of the seven year option, Clyde Irish could have exercised his right to purchase at anytime prior to her death. The court concluded its memorandum findings, making the following observation that Mr. Irish:

". . . bet and won. Clyde will pay taxes on his winnings, not as an inheritance tax, because the same are not taxable as such as determined by this court, but as income taxes, when and if he disposes of the property at a price over and above the option price."

The court determined ". . . the value of the farm subject to the option subject to taxation in this estate at the value of $46,800."

*Issue:*

Whether real estate subject to an option to purchase shall be valued for inheritance tax purposes at the option price of $46,800 or at its fair market value of $73,000 as of the date of the decedent's death?

Pursuant to ch. 72, Stats., and sec. 72.12(1), the state of Wisconsin is vested with the power to impose inheritance taxes and the assessment of inheritance taxes is required on any transfer to a distributee where the transfer is by will. Further, sec. 72.13(1) provides that for purposes of imposing the inheritance tax, the property transferred is to be valued at its clear market value:

"**Imposition of tax.** (1) The tax is imposed at the prescribed rates upon the transfer of property measured by its clear market value on the date of the decedent's death less enforceable liens and the deductions and exemptions provided in this subchapter . . . ."

In the *Estate of Gooding,* 269 Wis. 496, 69 N.W.2d 586 (1955), the court defined "clear market value" in the following language:

" 'Market value' is a term frequently used not only in the statutes of this state but in that of many other states. It has been defined by this court as follows: Clear market value is the sum which property would bring on a fair sale when sold by a willing seller not obliged to sell to a willing buyer not obliged to buy. *Allen v. Chicago & N.W.R. Co.* (1911), 145 Wis. 263, 266, 129 N.W. 1094; *Rahr Malting Co. v. Manitowoc* (1937), 225 Wis. 401, 274 N.W. 291." *Id.* at 502.

The parties take issue as to whether for purposes of imposing the inheritance tax pursuant to sec. 72.13(1), Stats., the clear market value is determined as of December 24, 1970, the date the option was created establishing the $46,800 purchase price or the $73,000 fair market value established at the time of death. However, the parties agree that minimally the value of the option, $46,800, is taxable pursuant to the statute as the option constitutes a transfer by will as provided in sec. 72.12(1).

It is well recognized there exists differences between valuing an asset for purposes of the federal state tax as opposed to the state of Wisconsin inheritance tax as recited in *In Matter of Estate of Stevens,* 74 Wis.2d 1, 5, 245 N.W.2d 673 (1976) ; *In re Banta's Estate,* 273 Wis. 328, 332, 77 N.W.2d 730 (1956). Federally, the tax is imposed on the testator's right to give property and is computed on the basis of the entire estate. On the other hand, the Wisconsin inheritance tax is a tax on the right

to receive property and is computed on the individual's share of the estate after federal estate taxes have been deducted. *In re Banta's Estate, supra,* states the following:

". . . Wisconsin is not concerned with the total estate. It taxes the property interest which passes to an individual upon the former owner's death. 'An "Estate tax" taxes not the interest to which some person succeeds on a death but the interest which ceases by reason of the death; while the inheritance tax is based on the interest to which the living succeeds.' *Estate of Ogden* (1932), 209 Wis. 162, 167, 244 N.W. 571." *Id.* at 332.

Thus, the issue presented in this appeal is whether the $46,800 option price or the $73,000 fair market value represents the "interest to which the living [Clyde Irish] succeeds."

The respondent, Clyde Irish, argues that the $46,800 option price must determine the property's clear market value for computation of the inheritance tax as the option was still outstanding against the property as of the date of the decedent's death. Further, he contends that the option price must establish the property's value as no third party will offer to purchase the farm for more than $46,800 since he can exercise the purchase right to the property at anytime during the term of the option at the agreed price of $46,800. To the contrary, the state argues that it is the fair market value of the farm property on the date of the decedent's death which is controlling, not the price of an unexercised option. Further, the value of the property transferred is not diminished when two or more parties attempt to contractually bind the state for inheritance tax purposes by determining the value to be placed upon property passing to a distributee upon the death of one of the parties. The value of the property must be measured by its clear market value unaffected by the existence of the contract. The ap-

pellant also contends that the respondent's option interests are merged into the rights he receives under the terms of the testator's will and at the time of the decedent's death and thus Clyde Irish takes his interest in the property under the will and not by any right given in the option to purchase.

The respondent places undue emphasis on the fact that the option had not been exercised nor had it expired on the date of the decedent's death. In the *Will of Jones,* 206 Wis. 482, 240 N.W. 186 (1932) the court held that a contract granting a business partner the option to purchase the testator's closed corporate stock at a discounted rate did not preclude the inheritance taxation of the asset when the terms of this *inter vivos*[1] contract were incorporated into the decedent's will. The *Will of Jones, supra,* was later cited as authority in the *Estate of Michel,* 262 Wis. 432, 55 N.W.2d 388 (1952).

The *Michel Case* involved two brothers, John and Carl, who jointly owned the stock in a closed corporation. The brothers entered into a sales agreement on September 30, 1947 providing that prior to September 30, 1953, John would sell to Carl his 1700 shares of stock at $40 per share. John died in December, 1948, and left a will naming Carl the sole beneficiary of his estate. The estate appraisers concluded that the $40 per share contract price was proper for purposes of valuing the estate. This court, relying on *Will of Jones, supra,* agreed with the trial court and affirmed the order for re-appraisal of the stock as a party having a property interest in an asset, by right of contract as well as under the terms of a

---

[1] *"Inter Vivos.* Between the living; from one living person to another. Where property passes by conveyance, the transaction is said to be *inter vivos,* to distinguish it from a case of succession or devise. So an ordinary gift from one person to another is called a 'gift *inter vivos,*' to distinguish it from a donation made in contemplation of death, (*mortis causa.*)" Black's Law Dictionary, Rev. 4th Ed. (1968).

will, acquires the asset "not by purchase under the provisions of the contract but as a legatee under the terms of the will." *Supra* at 434. The court determined that the close family relationship existing between the parties was material to its holding that the contract price was not controlling the stock's valuation. In this regard it was stated:

"It is not as though the purchaser named in the contract were a stranger whose right to buy the stock would manifestly affect its purchase price and the amount which might come to the estate as a result of its sale. Nor is the situation the same as would have resulted had Carl exercised his right under the contract to demand the transfer of the stock to him and thus bring to the estate an amount less than what appears to be its value. In other words, because of the peculiar facts existing, the value of the stock is not affected by the terms of the contract." *Estate of Michel, supra* at 434–35.

The *Will of Jones, supra,* and *Estate of Michel, supra,* support the appellant's contention that the merger of the respondent's option rights into his interests as a beneficiary under the terms of his mother's will renders the option price irrelevant in valuating the real estate in question. Obviously, the respondent cannot exercise option rights against property that he holds title to by virtue of his beneficial interest under her will. Thus, the option right was for practical purposes extinguished when he acquired the property as a legatee under the terms of the will. Therefore, even though as of the decedent's date of death the option had neither been exercised nor had it expired, it would stretch reasoned judgment to determine the farm's value at the $46,800 option price on land he had already acquired under the will rather than the fair market value of $73,000.

The merger of the respondent's option right with his interest in the property under the will is a factor which distinguishes this case from the recent decision in *In re*

*Estate of Weber*, 86 Wis.2d 151, 271 N.W.2d 657 (1978). In *Weber* the court held a shareholder's restrictive agreement with a closed corporation providing for the mandatory redemption of his shares at a fixed price established the stock's value for inheritance tax purposes. The court recognized that where the option right rested in the officer's corporation and the will beneficiaries did not participate in the management of the corporation nor own additional shares of stock in this business, there was no "windfall benefit" accruing to the legatees by virtue of the tax valuation being set at the fixed contract price. Further, the corporation acquired no windfall benefit as the price of the stock established in the contract was made at "arm's length." This conclusion was supported by the following reason:

"There is no showing that there was any market for the shares. Minority shares in a close corporation are frequently of little value because of the lack of effective voice in the policies of the corporation on the part of the minority." *Id.* at 160.

In this case the asset to be valued is readily marketable —prime farm real estate—as contrasted with the stock of a closely held family corporation which has a very limited market. Therefore, to value the property at only $46,800 would create a $26,200 windfall benefit to the respondent as the clear market value of the property on the date of the decedent's death was $73,000.

We hold that the $73,000 real estate appraisal reflects the clear market value of the inherited farm land pursuant to sec. 72.13(1), Stats., and the inheritance tax should be computed on this amount and not the $46,800 option price.

*By the Court.*—The order is reversed and cause remanded for proceedings consistent with this opinion.