IN MATTER OF ESTATE OF PUCHNER, Deceased: STATE, Appellant, v. PUCHNER, and others, Respondents.

*No. 75–541. Argued May 3, 1977.—Decided June 14, 1977.*
(Also reported in 254 N.W.2d 722.)

526

For the appellant the cause was argued by *Allan P. Hubbard,* assistant attorney general, with whom on the brief was *Bronson C. La Follette,* attorney general.

For the respondents there was a brief and oral argument by *William E. Shaw* of Milwaukee.

CONNOR T. HANSEN, J. The facts are not in dispute. During his lifetime, Irving A. Puchner (hereinafter decedent), a lawyer, was a director, officer and counsel for Charter Wire, Inc., and three of its wholly-owned subsidiaries. He occupied these positions for approximately 25 years and owned less than two percent of the stock in the parent corporation.

In June, 1966, each of the four corporations passed the following resolution:

"RESOLVED, that at the death of any of the following officers, the salary, including bonus, that such officer would have received if he had lived, be continued for the widow of such officer for a period of two years following his death. . . ."

The decedent was one of the officers named in the resolutions. He died on August 6, 1968. The resolutions were in force at the time of his death although they could have been rescinded by the board of directors of the respective corporations at any time prior to his death. Pursuant to the provisions of the resolutions, the corporations paid the decedent's widow a total of $72,000.

Under the resolutions, the decedent had no right to designate a beneficiary. The decedent made no contributions. The total payment was not funded at any time prior to the decedent's death. The decedent at the time of his death was employed by the corporations involved and was not receiving, nor did he have any right to re-

ceive, any post-employment benefits. The total payment went directly from the corporations to the widow and did not pass through the decedent's estate or any testamentary trust.

The decedent left a will and codicils thereto which were duly admitted to probate. Paragraph seven of the will established a trust providing in pertinent part:

"SEVENTH: All the rest, residue and remainder of my property, of whatsoever nature, wheresoever situated, and however held, which is or may be subject to my testamentary disposition at the time of my death I give, devise and bequeath to my Trustees in trust nevertheless for the uses and purposes, with the powers and in the manner and for the time hereinafter mentioned, to-wit:

"a. My Trustees shall pay the income of my trust estate to my wife, Helen Sisson Puchner, for as long as she shall live.

"b. At the death of my wife or at my death if my wife predecease me, my Trustees shall divide my trust estate into two equal shares. One share shall be set aside for my son, Alfred Puchner, and shall be known as the 'Alfred Puchner Trust'; and one share shall be set aside for my daughter, Judith Puchner, and shall be known as the 'Judith Puchner Trust.'

"c. The income of the Alfred Puchner Trust shall be paid to my son, Alfred Puchner for as long as he shall live. At his death, the Alfred Puchner Trust shall be divided into as many equal shares as my said son shall leave children (hereinafter referred to as grandchildren) him surviving, and one share shall be set aside for each such child.

" . . . .

"e. My Trustees shall pay the net income of the Judith Puchner Trust to my daughter, Judith Puchner, for as long as she shall live. At her death, the Judith Puchner Trust shall be divided into as many equal shares as my said daughter shall leave children (hereinafter referred to as grandchildren) her surviving, and one share shall be set aside for each such child."

At the time of his death, the decedent was survived by his two children and by three grandchildren. Subsequent

to the decedent's death and prior to the trial court's determination of the inheritance tax, three additional grandchildren were born.

Pursuant to a petition for determination of inheritance tax, the trial court held that the total payment made to the widow as a result of the corporate resolutions was not includable in the decedent's taxable estate for inheritance tax purposes. The lower court also held that all six grandchildren should be considered in computing the inheritance tax due on the remainders of the Alfred Puchner Trust and the Judith Puchner Trust.

Additional facts will be set forth in considering the issues, which are:

1. Are the payments to the widow resulting from the corporate resolutions includable in the decedent's taxable estate for inheritance tax purposes?

2. Are the distributive shares of the remainders of the Alfred Puchner and Judith Puchner Trusts to be computed on the basis of the number of grandchildren existing as of the date of the death of the decedent or on the basis of the number of grandchildren existing as of the date of the entry of the inheritance tax order?

## CORPORATE PAYMENTS.

The parties do not appear to contest the fact that the payments constituted benefits paid to a beneficiary under an employee benefit plan. While ch. 72, Stats., itself does not contain a definition of "employe benefit plan" a general description of the features of such plans is summarized in TAXES—The Tax Magazine, Vol. 50, No. 10, p. 580, (October, 1972), *Employee Death Benefit Plans— A Reappraisal*, as follows:

". . . Essentially an employee death benefit plan is a formal or informal agreement instituted by an employer (or partnership) by which the employer agrees to make

a payment or payments to designated persons after the death of a particular employee."

The respondents contend that this court's decisions in *Estate of King*, 28 Wis.2d 431, 137 N.W.2d 122 (1965), and *Estate of Sweet*, 270 Wis. 256, 70 N.W.2d 645 (1955), are controlling and that the appellant is precluded from taxing the payments for inheritance tax purposes because no transfer under secs. 72.01(3)(b) and 72.24(2), 1967, Stats.[1] had occurred.

The appellant contends that both *King, supra,* and *Sweet, supra,* are inapplicable and that the payments are taxable for inheritance tax purposes under the provisions of sec. 72.01(3)(c), Stats. This section was created by ch. 239, Laws of 1967, which provided in part that its provisions applied to all persons who died after January 1, 1968.

In *King, supra,* this court addressed the issue of the taxability of payments received by a beneficiary under an employee pension trust agreement which did not allow the employee to designate the beneficiary nor to make any provision in regard to the disposition of the funds covered by the agreement. Only the employee could receive benefits during his lifetime and only his widow was entitled to payments after his death. This court held that the payments to the widow were nontaxable transfers within the meaning of sec. 72.01(3)(b), 1965 Stats., which provided for taxation:

"(b) When a transfer is of property, made without an adequate and full consideration in money or money's worth by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, intended to take effect in possession or enjoyment at or after the death of the grantor, vendor or donor, including

[1] Hereinafter all references, unless otherwise stated will be to the 1967 statutes which were in effect at the death of the decedent and which are therefore applicable.

any transfer where the transferor has retained for his life or for any period not ending before his death: 1 the possession or enjoyment of, or the right to the income, or to economic benefit from, the property, or 2 the right, either alone or in conjunction with any person, to alter, amend, revoke or terminate such transfer, or to designate the beneficiary who shall possess or enjoy the property, or the income or economic benefit therefrom."[2]

*King, supra; Stone, supra;* and *Sweet, supra,* each considered various forms of employee benefit plans. The taxability of payments received under the particular plans in those cases was based upon the interpretation of sec. 72.01(3)(b), Stats.

However, with the 1967 enactment of sec. 72.01(3)(c), Stats., a clear legislative intent was expressed to subject employee benefit plans, except those specifically excluded, to the imposition of an inheritance tax. Sec. 72.01(3)(c) provides:

"(c) Benefits paid to a beneficiary under an employe benefit plan shall be taxable for inheritance tax purposes except to the extent that the proportionate share resulting from the employer's contribution would be excludable in the gross estate of the decedent under sec. 2039 of the internal revenue code. However, the tax imposed herein shall not apply to benefits paid under the plans specifically mentioned in s. 72.04(6) or to benefits payable under the U.S. civil service retirement program. This subsection shall apply regardless of whether or not there is a requirement for filing a federal estate tax return."

The language of sec. 72.01(3)(c), Stats., is that, with stated exceptions, employee benefit plans are subject to an inheritance tax. Under the facts of this case, sec. 72.01(3)(c), and not sec. 72.01(3)(b), controls. *King,*

[2] *See: In Matter of Estate of Stevens,* 74 Wis.2d 1, 245 N.W.2d 673 (1976); and *Estate of Stone,* 10 Wis.2d 467, 103 N.W.2d 663 (1960).

*supra,* and *Sweet, supra,* decided prior to the enactment of sec. 72.01(3)(c), are not viable authority for the position taken by the respondents.

The respondents then argue that regardless of the language or effect of sec. 72.01(3)(c), Stats., there was no "transfer" within the meaning of that term as defined in sec. 72.24(2):

"(2) The word 'transfer' includes the passing of property or any interest therein in possession or enjoyment, present or future, by inheritance, descent, devise, succession, bequest, grant, deed, bargain, sale, gift or appointment in the manner prescribed in ss. 72.01 to 72.24."

It is undisputed that the decedent had no power, option or discretion to effect the distribution of the corporate funds. While the necessity for some measure of control by the employee may be required to establish a transfer under sec. 72.01(3)(b), Stats., no such requirement is contained in sec. 72.01(3)(c). Nor does sec. 72.24 (2) specifically provide that ownership or control in the form of the ability to effect the distribution of the funds is a requirement in establishing that a transfer has occurred ". . . in the manner prescribed in ss. 72.01 to 72.24." It cannot be denied that upon the death of the decedent, the right to the possession or enjoyment of the two years' salary had passed to the widow. In the enactment of sec. 72.01(3)(c), the legislature has determined that the payment of such benefits, subject to the exclusions provided therein, shall constitute a taxable transfer regardless of the control or lack of control the employee has over the distribution of the funds.

The next proposition presented by the respondents is that the payments under this particular employee benefit plan have been specifically exempted from inheritance taxation by the provisions of sec. 72.01(3)(c), Stats. The applicable language excludes from inheritance taxa-

tion all benefits paid under an employee benefit plan, ". . . to the extent that the proportionate share resulting from the employer's contribution would be excludable in the gross estate of the decedent under sec. 2039 of the internal revenue code. . . ."

Section 2039 of the Internal Revenue Code (hereinafter Code) in effect at the date of the decedent's death provided:

"Section 2039. Annuities (a) General.—The gross estate shall include the value of an annuity or other payment receivable by any beneficiary by reason of surviving the decedent under any form of contract or agreement entered into after March 3, 1931 (other than as insurance under policies on the life of the decedent), if under such contract or agreement, an annuity or other payment was payable to the decedent, or the decedent possessed the right to receive such annuity or payment, either alone or in conjunction with another for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death.

"(b) Amount includable.—Subsection (a) shall apply to only such part of the value of the annuity or other payment receivable under such contract or agreement as is proportionate to that part of the purchase price therefore contributed by the decedent. For purposes of this section, any contribution by the decedent's employer or former employer to the purchase price of such contract or agreement (whether or not to an employee's trust or fund forming part of a pension, annuity, retirement, bonus or profit-sharing plan) shall be considered to be contributed by the decedent if made by reason of his employment.

"(c) Exemption of annuities under certain trusts and plans.—Notwithstanding the provisions of this section or of any provision of law, there shall be excluded from the gross estate the value of an annuity or other payment receivable by any beneficiary (other than the executor) under—

"(1) an employees' trust (or under a contract purchased by an employees' trust) forming part of a pension, stock bonus, or profit-sharing plan which, at the time of

the decedent's separation from employment (whether by death or otherwise), or at the time of termination of the plan if earlier, met the requirements of section 401(a);

"(2) a retirement annuity contract purchased by an employer (and not by an employees' trust) pursuant to a plan which, at the time of decedent's separation from employment (by death or otherwise), or at the time of termination of the plan if earlier, was a plan described in section 403(a);

"(3) a retirement annuity contract purchased for an employee by an employer which is an organization referred to in section 503(b)(1), (2), or (3), and which is exempt from tax under section 501(a); or

"(4) chapter 73 of title 10 of the United States Code.

"If such amounts payable after the death of the decedent under a plan described in paragraph (1) or (2), under a contract described in paragraph (3), or under chapter 73 of title 10 of the United States Code are attributable to any extent to payments or contributions made by the decedent, no exclusion shall be allowed for that part of the value of such amounts in the proportion that the total payments or contributions made by the decedent bears to the total payments or contributions made. For purposes of this subsection, contributions or payments made by the decedent's employer or former employer under a trust or plan described in paragraph (1) or (2) shall not be considered to be contributed by the decedent, and contributions or payments made by the decedent's employer or former employer toward the purchase of an annuity contract described in paragraph (3) shall, to the extent excludable from gross income under section 403(b), not be considered to be contributed by the decedent. This subsection shall apply to all decedents dying after December 31, 1953. For purposes of this subsection, contributions or payments on behalf of the decedent while he was an employee within the meaning of section 401(c)(1) made under a trust or plan described in paragraph (1) or (2) shall be considered to be contributions or payments made by the decedent. For purposes of this subsection, amounts payable under chapter 73 of title 10 of the United States Code are attributable to payments or contributions made by the decedent only to the extent of amounts deposited by him pursuant to section 1438 of such title 10. . . ."

The parties have agreed that under this particular employee benefit plan the employer contributed 100 percent of the death benefits; that the plan did not constitute a qualified pension plan or annuity under the pertinent Code provisions; and that the payments to the widow would not qualify for the exclusion from the decedent's gross estate for federal estate tax purposes under sec. 2039 (c) of the Code.

The appellant contends that since the payments received by the widow would not be excluded from the gross estate under sec. 2039 (c) of the Code, they are subject to inheritance tax under the clear provisions of sec. 72.01 (3) (c), Stats., which taxes *all* such payments unless specifically excluded. The respondents contend that even though the payments were not specifically excludable under sec. 2039 (c), they were not includable under sec. 2039 (a) and (b) because they were not payable to the decedent, and thus no inheritance tax can be imposed. The difference in the positions taken by the parties is dependent upon an interpretation of the pertinent language in sec. 72.01 (3) (c). The appellant contends that the ". . . excludible in the gross estate of the decedent under sec. 2039 of the internal revenue code . . ." language refers only to sec. 2039 (c). The respondents contend that if the payments would not be included in the gross estate under sec. 2039 (a) and (b), then they in effect would be excluded and no inheritance tax could be imposed.

The primary purpose of enacting sec. 2039 was to reach, for federal estate tax purposes, certain employee death benefits without requiring reference to the troublesome terms of "transfer" and "property" which had caused uncertainties in the 1939 Internal Revenue Code. In addition, sec. 2039 was designed to include survivor benefits not connected with employment. It applies to both joint and survivorship annuities and self and survivorship annuities, but is not solely limited to the

taxation of annuities. 26 *Tax Law Review* (1971), 329, 330, 331.

Section 2039 (a) generally set forth what is includable in the gross estate for federal estate purposes when dealing with employee benefit plans which meet the criteria therein stated. Sec. 2039 (b) limits the applicability of sec. 2039 (a) to that part of the value of the annuity or other payment which bears the same ratio to the total value as the part of the purchase price contributed by the decedent bears to the total purchase price. Contributions by the decedent's employer are considered to be made by the decedent if made by reason of his employment. Neither sec. 2039 (a) or (b) are exclusive in the area of federal estate tax on employee benefit plans. Section 20.2039–1 (a) of the Internal Revenue Regulations provides: "The fact that an annuity or other payment is not includible in a decedent's gross estate under sec. 2039 (a) and (b) does not mean that it is not includible under some other section. . . ." *See also:* 26 *Tax Law Review, supra,* 331. In fact such annuities or payments may be included in a decedent's gross estate for federal estate tax purposes under any one of several other Code sections; notably secs. 2033, 2035, 2036, 2038, 2039 and 2042. TAXES—The Tax Magazine, *supra,* 581; 26 *Tax Law Review, supra,* 331, *fn.* 16.

In contrast to sec. 2039 (a) and (b), sec. 2039 (c) is an exclusive provision. The exclusion of the survivor's benefits under sec. 2039 (c) precludes an estate tax under any and all other estate tax sections of the Code. 26 *Tax Law Review, supra,* 332, 333, 346, 347; Internal Revenue Regulations, sec. 20.2039–2 (b), Ex. 3. Section 2039 (c) provides that if the source of the payment to the designated beneficiary is a qualified employee pension, stock bonus or profit-sharing plan, a qualified retirement annuity plan purchased by an employer, a retirement annuity contract purchased by certain tax exempt employers

or the Retired Servicemen's Family Protection Plan, part of the payments will be excluded from the gross estate.

Subject to certain variations, the amount of the payments to be excluded from a decedent's gross estate under sec. 2039(c) is an amount which bears the same ratio to the value of the annuity or other payment receivable by the beneficiary as the employer's contribution on the employee's account to the plan or toward the purchase of the annuity bears to the total contribution thereto. 26 *Tax Law Review, supra,* 349. That is, the proportionate share of the payments under a qualified plan which resulted from the employer's contributions would be excluded from the gross estate for federal estate tax purposes. The exclusion is however limited to portions of payments received under described qualified plans.

Sec. 2039(c) thus contains the only exclusion language in sec. 2039, and it is a total exclusion from the federal estate tax. We conclude that it is to that exclusion provision which the language of sec. 72.01(3)(c), Stats., plainly refers.

Sec. 72.01(3)(c), Stats., asserts in broad language that benefits under an employee benefit plan shall be taxed. Benefits paid under specifically mentioned plans are exempted. In addition, the ". . . proportionate share resulting from the employer's contribution . . ." excludable under sec. 2039 of the Code is also exempted. The clear import of the statutory language is that all employee death benefits, except those specifically excluded, are to be taxable. The only "proportionate share resulting from the employer's contribution" and excludable under sec. 2039, is that set forth in sec. 2039(c).

We believe that to equate non-inclusion in the provisions of sec. 2039(a) and (b) with the total exclusion provided by the exclusive provisions of sec. 2039(c) would be to misinterpret the plain meaning of sec. 72.01(3)(c), Stats. Non-inclusion in sec. 2039(a) and (b) does not necessarily result in exemption from federal

estate tax as that tax could nevertheless be imposed under some other Code provision. The question here is not whether estate tax could be imposed under sec. 2039 (a) or any other code section. The question is whether, if a particular plan did meet the criteria of sec. 2039 (a) and (b), or any other Code section, portions of the payments made thereunder would nevertheless be specifically excluded by sec. 2039 (c). We do not find the tax cases cited by the respondents to be persuasive.

The respondents further contend that by referring to the entire sec. 2039 of the Code, the legislature intended to exempt from Wisconsin inheritance tax both qualified and unqualified plans that were exempt from federal estate tax. If the legislature did intend that result, the plain language of sec. 72.01 (3) (c), Stats., did not achieve it for the reason that unqualified plans not included under sec. 2039 are not necessarily exempt under all other Code provisions.

We are unable to find either statutory or, what in our opinion, is authoritative case law to support the contention of the respondents that the enactment of sec. 72.01 (3) (c), Stats., was intended to federalize Wisconsin tax law to correspond to federal law and avoid taxation both as income and as an inheritance. While the avoidance of double taxation may have been intended as to qualified plans, no such intent as to unqualified plans or as to general taxation matters has been expressed by the legislature. *See: American Bank & Trust Co. v. Dept. of Revenue,* 60 Wis.2d 660, 211 N.W.2d 627 (1973), and *Estate of Rogovin v. Department of Revenue,* 57 Wis.2d 683, 205 N.W.2d 136 (1973).

The corporate payments to the widow would not have been excluded from the gross estate of the decedent under the provisions of sec. 2039 (c) of the Code. The payments were thus subject to the imposition of Wisconsin inheritance tax under the provisions of sec. 72.01 (3) (c), Stats.

## DISTRIBUTIVE SHARES.

The decedent's will provided for the establishment of a trust which paid the income therefrom to his widow for life. Upon her death the trust was to be divided into two equal trusts, one for each child of the decedent. Each child received a life interest in their respective trusts and upon the deaths of the children, the corpus of each trust was to be paid in equal shares to the grandchildren of the decedent. At the time of the decedent's death, he was survived by three grandchildren. At the time that the inheritance tax order was entered the number of remaindermen had increased to six. The trial court computed the remainder interests in the trusts on the basis of their being six grandchildren at the time of the tax order.

The appellant contends that the inheritance tax should have been determined on the basis of the number of grandchildren surviving on the date of the decedent's death.

On the date of the decedent's death, secs. 72.15 (5) and (8), Stats. 1967, relating to the valuation of future estates provided:

"(5) BASIS FOR APPRAISAL OF FUTURE ESTATES. Whenever a transfer of property is made upon which there is, or in any contingency there may be, a tax imposed, such property shall be appraised at its clear market value immediately upon the transfer or as soon thereafter as practicable. The value of every future or limited estate, income, interest or annuity dependent upon any life or lives in being, shall be determined by the rule, method and standard of mortality and rate of interest employed by the commissioner of insurance in ascertaining the value of policies of life insurance and annuities for the determination of liabilities of life insurance companies, except that for every future or limited estate, income, interest or annuity the value of which is not based upon an assumed rate of interest the rate of

interest for making such computation shall be five per cent per annum. The tax so determined shall be construed to be upon the transfer of a proportion of the principal or corpus of the estate equal to the present value of such future or limited estate, income, interest or annuity, and not upon any earnings or income of said property produced after death, and such earnings or income shall not be exempt from the income tax. Such tax shall be due and payable forthwith out of the property transferred.

"....

"(8) ESTATES IN TRUST. When property is transferred in trust or otherwise, and the rights, interests or estates of the transferees are dependent upon contingencies or conditions whereby they may be wholly or in part created, defeated, extended or abridged, a tax shall be imposed upon such transfer at the lowest rate which, on the happening of any of the said contingencies or conditions, would be possible under the provisions of sections 72.01 to 72.24, inclusive, and such tax so imposed shall be due and payable forthwith out of the property transferred; provided, however, that on the happening of any contingency or condition whereby the said property or any part thereof is transferred to a person or corporation, which under the provisions of sections 72.01 to 72.24, inclusive, is required to pay a tax at a higher rate than the tax imposed, then such transferee shall pay the difference between the tax imposed and the tax at the higher rate, and the amount of such increased tax shall be enforced and collected as provided in sections 72.01 to 72.24, inclusive; provided further, that if on the happening of any such contingency or condition the said property or any part thereof is transferred to persons or corporations, which under the provisions of sections 72.01 to 72.24, inclusive, would be required to pay less tax on the transfer than has been paid, a return shall be made to the person or persons entitled thereto of so much of the tax as will reduce the same to the amount which would have been assessed originally on such transfer, had the date of the happening of such condition or contingency and the persons ultimately receiving such property been known when the original assessment was made. Such return of tax shall be made in the manner provided in section 72.08."

In *Estate of Allen*, 243 Wis. 44, 9 N.W.2d 102 (1943), this court made it clear that sec. 72.15(5), Stats., was applicable to the valuation of vested future interests, while sec. 72.15(8), was applicable to the valuation of contingent future interests. The difference between vested and contingent future interests was established by the provisions of sec. 230.13, which provided:

"230.13 Vested and contingent estates. Future estates are either vested or contingent. They are vested when there is a person in being who would have an immediate right, by virtue of it, to the possession of the lands upon the ceasing of the intermediate or precedent estate. They are contingent whilst the person to whom, or the event upon which, they are limited to take effect remains uncertain."

A significant difference between the valuation processes set forth in sec. 72.15(5) and (8), Stats., is that the latter section provides for a redetermination of the tax at such time as the contingencies or conditions come into being, while the former contains no provision for redetermination.

Under the terms of the instant trusts, the identities of the remaindermen can only be established as of the date of the death of the two children life tenants. *See: Will of Latimer*, 266 Wis. 158, 63 N.W.2d 65 (1954). However, at the time the inheritance tax order was entered, contingent estates as defined by sec. 230.13, Stats., were in fact, the lives then in being. The trial court considered the contingent estates in being and properly determined that sec. 72.15(8) was applicable. The decision of the trial court reflects that the court was well aware of the increase in the number of remaindermen. Under these facts, it would serve no useful purpose to enter an inheritance tax order which, on its face, would be inapplicable to the known facts and thus require a future

redetermination of the tax under the provisions of sec. 72.15(8).

The appellant directs our attention to the fact that sec. 72.15(8), Stats., 1967, was eliminated by the 1971 version of the inheritance tax laws and argues that sec. 72.15(8) should not have applied because it had been "unnecessary" since 1913. The same argument was unsuccessfully advanced in *Estate of Scherffius,* 62 Wis.2d 687, 694, 695, 215 N.W.2d 547 (1974). The 1967 statutes were applicable to the case at bar. Under those statutes, the trial court did not err in computing the inheritance tax on the basis of the six remaindermen and in retaining jurisdiction for possible future redetermination of the tax.

The order of the trial court is reversed insofar as it determined the payments from the corporation to the widow were not subject to an inheritance tax. That portion of the order which computed the tax on the basis of the six remaindermen in being at the time of the entry of the order is affirmed.

*By the Court.*—Order affirmed in part, and reversed in part.